DECISION AND JUDGMENT ENTRY.
{¶ 1} Raymond Ward appeals from his six rape convictions and sentences in the Meigs County Common Pleas Court. On appeal, Ward first contends that insufficient evidence supports his six rape convictions. Because, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt, we disagree. Ward next contends that his six rape convictions are against the manifest weight of the evidence. Because substantial evidence supports his six convictions, we disagree. Ward next contends that the State failed to provide Brady material to him, i.e. (1) the Bureau of Criminal Identification and Investigation ("BCI") report related to the victim's red lingerie and (2) the victim's *Page 2 
medical exam. We disagree because the state eventually did turn these documents over to Ward. Ward next contends that the trial court erred when it did not grant his motion for a new trial based on newly discovered evidence. Because Ward did not demonstrate that the newly discovered evidence complied with all of the six factors in State v.Petro (1947), 148 Ohio St. 505, syllabus, we disagree. Ward next contends that the jury's verdicts must be reversed because of cumulative error. Because we could not find any error leading to his six convictions, let alone multiple errors, we disagree. Ward finally contends that we should remand this cause to the trial court so that it can re-sentence him pursuant to State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Because the trial court considered statutes that theFoster court found unconstitutional, we agree. Accordingly, we overrule Ward's first five assignments of error and sustain his sixth assignment of error. We vacate Ward's six sentences and remand this cause to the trial court for re-sentencing.
 I {¶ 2} The Meigs County Grand Jury indicted Ward on six counts of rape, violations of R.C. 2907.02(A)(1)(b). The indictment contained several other counts, however, this appeal is limited to counts 6-10 and 14, i.e. six counts of rape involving a victim under the age of 13.
 {¶ 3} Ward entered not guilty pleas and the matter proceeded to a jury trial. On the morning of trial, the state turned over to Ward a BCI report involving the victim's red lingerie. During the trial the state turned over the victim's medical records involving her medical exam. *Page 3 
 {¶ 4} The state called the victim as a witness. The victim testified that Ward is her uncle through marriage, and that Ward raped her on five separate days in the fall of 2001 when she stayed at her aunt and uncle's home overnight. She could not recall exact dates, but testified to five separate days of staying overnight that involved various sexual incidents.
 {¶ 5} The first overnight incident occurred shortly after school started in the fall of 2001 when the victim stayed home from school to go with Ward on his paper route. At one stop, when Ward's five year old son got out of the car to deliver a newspaper, Ward placed his hand between the victim's legs. A short time later, the victim stayed overnight at Ward's home and slept on a chaise lounge chair in her boxers and t-shirt. She awakened to Ward rubbing his hand up her leg. He undressed her, kissed her breasts, and used his finger and tongue to penetrate her vagina. She saw that Ward had an erection when he finished. As a result, she began to see Ward more as a boyfriend, instead of an uncle.
 {¶ 6} During the second overnight incident, the victim again woke up in the middle of the night on the lounge chair with Ward rubbing her leg. He again penetrated her vagina with his finger and tongue. Once again she noticed that Ward had an erection when he finished. She knew it was "wrong" but found it "exciting."
 {¶ 7} The third overnight incident occurred later in the fall. Again, while she slept on the lounge, Ward awoke her and penetrated her vagina with his finger and tongue. This time he pulled her to the edge of the chair and tried to insert *Page 4 
his erected penis in her vagina. However, she closed her legs to stop him. After this incident, she did not stay overnight at her aunt and uncle's home for a couple of weeks.
 {¶ 8} The fourth overnight incident occurred in similar fashion to the previous encounters. Ward awoke her on the lounge and penetrated her with his finger and tongue. However, he then inserted his erected penis in her vagina. This time she did not try to stop him. She recalled that Ward wore a black t-shirt, and noticed semen on his shirt when he got up.
 {¶ 9} At some point, Ward told her that they were going to get married and raise kids in the mountains. Ward also told her that he preferred having sex with her because she was "tighter" than his wife.
 {¶ 10} During the fifth overnight incident, Ward woke her, penetrated her with his finger and tongue, and then talked with her. She kissed him while they talked because she thought that she was in love with him. He told her that he was going to ask his wife if they could have sex in the bedroom. The next night, Ward's wife told the victim that she could go into the bedroom with Ward. She entered the bedroom and found Ward waiting for her. He took off her cloths, penetrated her with his tongue, put on a condom and penetrated her with his penis. Later, he put on another condom and inserted his penis in her again. After they had sex for two hours, Ward's wife knocked on the bedroom door and said their time was up. The victim said that her aunt permitted the sex because her aunt had cheated on Ward. She said that her aunt was not mad at her and the next day talked to her about it by asking her about Ward's penis. *Page 5 
 {¶ 11} Eventually, the victim's parents became suspicious of sexual activity. The Meigs County Sheriffs Office investigated. At first, the victim did not want to talk or cooperate because she did not want to get Ward in trouble. In fact, she attempted suicide, because she thought that Ward might stay out of trouble if she were dead.
 {¶ 12} The jury also heard the testimony of Rob Romines and Chuck Knopp. Romines testified that he and Ward occasionally worked paper routes together. On one occasion Ward told Romines that he liked "younger, tighter girls." Knopp, a social worker, told the jury about his interview with Ward, during which Ward denied making such a statement to Romines.
 {¶ 13} The jury found Ward guilty of the six counts of rape, but not guilty of four counts of rape and one count of corrupting another with drugs. While these five acquittals involved the same victim, they are not at issue in this appeal. The trial court sentenced Ward accordingly and rendered non-minimum, consecutive sentences.
 {¶ 14} Ward appeals the six rape convictions and sentences. He asserts the following six assignments of error: I. "There was insufficient evidence upon which a jury could have convicted the defendant." II. "The jury's verdict is against the manifest weight of the evidence." III. "The verdict of the jury must be reversed because the State failed to provide Brady material to the defendant." IV. "The trial court erred by failing to grant a new trial based on newly discovered evidence given the compromised jury verdict." V. "The jury's verdict must be *Page 6 
reversed due to cumulative error." And, VI. "The Supreme Court's holding in State v. Foster requires reversal of the sentence."
 II. {¶ 15} In his first assignment of error, Ward contends that the state failed to present sufficient evidence to sustain his rape convictions. Specifically, Ward maintains that the state did not prove six separate rape offenses occurred on or about or between September 1, 2001 and September 30, 2001.
 {¶ 16} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 17} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of *Page 7 
fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} Here, according to the amended indictment, Ward's six rape convictions occurred on or about or between September 1, 2001 and September 30, 2001. The state alleged that Ward, six separate times, violated R.C. 2907.02(A)(1)(b), which provides in relevant part: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 19} R.C. 2907.01(A) provides: "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 20} Ward maintains that the victim's testimony was so vague as to "time" that "no jury could have been expected to make the chronological determinations necessary to convict on all [six of] the September 2001" rape counts.
 {¶ 21} We find that the victim's testimony provided the jury with sufficient evidence to support its determination that six separate rape offenses occurred on or about September 1, 2001 through September 30, 2001.
 {¶ 22} We first examine the evidence as it relates to the dates of the allegations. "It is well-stated that, particularly in cases involving sexual *Page 8 
misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. (Cite omitted.) In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period. In State v. Gingell (1982),70 Ohio App.3d 364, the Hamilton County Court of Appeals held that, if precise time and dates are not essential elements of the offense or offenses charged, omission of specific dates in an indictment or bill of particulars is without prejudice or constitutional consequence, provided that failure to provide time and dates does not materially deprive the defendant of an opportunity to prepare a defense." State v. Burdett
(June 21, 1994), Franklin App. No. 93APA08-1214.
 {¶ 23} Here, the essence of the victim's testimony is that the six rapes occurred in the fall of 2001, with the first rape occurring shortly after school started in the fall of 2001. We find that this testimony establishes that the dates of the six offenses as stated in the indictment "reasonably fall within that period."
 {¶ 24} We further find that six separate offenses occurred within the time frame alleged in the indictment. Each alleged rape involved vaginal intercourse involving Ward's finger ("digital"), tongue ("oral"), or penis. The victim testified to certain facts that separated the offenses from each other, including that the six offenses occurred on five different days.
 {¶ 25} Based on the victim's testimony, we will review the facts in chronological order. First incident: Counts six and seven of the indictment involved digital and oral rapes that occurred the night after she went with Ward *Page 9 
on his paper route. Second incident: Count eight again involved oral rape (the state did not pursue the digital rape) on a different night when she did not go on Ward's paper route. Third incident: Count nine again involves an oral rape (the state did not pursue the digital rape) on a later night when Ward also tried to insert his penis into the victim's vagina. Fourth incident: Count ten involves for the first time Ward inserting his penis into the victim's vagina (the state did not pursue the digital and oral rapes) and this rape did not occur in Ward's bedroom. And, fifth incident: Count fourteen involves Ward again inserting his penis into the victim's vagina on another night and this rape occurred in Ward's bedroom.
 {¶ 26} Therefore, after viewing the above evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the six crimes of rape proven beyond a reasonable doubt. Specifically, the state introduced evidence that showed that six separate rapes occurred on or about September 1, 2001 through September 30, 2001.
 {¶ 27} Accordingly, we overrule Ward's first assignment of error.
 III. {¶ 28} In his second assignment of error, Ward contends that the jury's six verdicts are against the manifest weight of the evidence.
 {¶ 29} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175. *Page 10 
 {¶ 30} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 31} The trier of fact is free to believe or disbelieve a witness's testimony in whole or in part. State v. Wagner (Feb. 29, 2000), Pickaway App. No. 99CCA23, citing Swanson v. Swanson (1976), 48 Ohio App.2d 85,97. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 32} Ward makes the same arguments under his manifest weight claim as he did under his insufficient evidence claim. That is, the victim was so vague as to time when she testified that "no jury could have been expected to make the chronological determinations necessary to convict on all the September 2001" *Page 11 
rape counts. Also, Ward contends that the victim was not credible because she contradicted herself and could not recall statements that she told the police.
 {¶ 33} Here, Ward points to places in the record showing that the victim was confused and could not recall statements to support its argument that she was not credible. The jury heard the victim's testimony, and chose to believe the state's version of the events based on the victim's testimony. Ward cross-examined the victim but did not refute the victim's testimony by any testimonial or physical evidence. We outlined the distinguishing facts of each alleged offense in Ward's first assignment of error.
 {¶ 34} We reviewed the record and are mindful that the jury was in the best position to judge the credibility of the victim and the weight to be given her testimony. We cannot say, in resolving conflicts in the evidence, that the jury clearly lost its way and created such a manifest miscarriage of justice that any of the convictions must be reversed and a new trial granted. The state introduced substantial evidence to show that Ward raped the victim six separate times on or about September 1, 2001 through September 30, 2001. Therefore, we find that the six rape convictions are not against the manifest weight of the evidence.
 {¶ 35} Accordingly, we overrule Ward's second assignment of error.
 IV. {¶ 36} In his third assignment of error, Ward contends that the state failed to provide him with the results of the victim's medical exam, which occurred after she made the allegations against him. He further contends that the state failed to turn over the BCI report involving the victim's red lingerie. He asserts that these *Page 12 
failures by the state violated the rule set forth in Brady v.Maryland (1963), 373 U.S. 83, 87, 83, which requires the state to disclose exculpatory evidence. The state maintains that it turned over the evidence to Ward.
 {¶ 37} In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 1196-1197. "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." State v. Johnston (1988), 39 Ohio St.3d 48, paragraph five of the syllabus, following United States v. Bagley [1985], 473 U .S. 667. The defense bears the burden of proving that the state suppressed material, exculpatory evidence. State v. Jackson (1991),57 Ohio St.3d 29, 33.
 {¶ 38} Here, the record shows that state turned over the medical exam of the victim during the trial. Ward brought it to the state's attention and the trial court ordered that the state provide it to Ward. The fact that it occurred during the trial, as opposed to before trial, does not violate Brady. State v. Iacona (2001), 93 Ohio St.3d 83, 100. Likewise, the record shows that the state turned over the BCI test results of the red lingerie to Ward on the morning of the first day of trial. In addition, the trial court excluded the red lingerie from evidence, and the jury *Page 13 
acquitted Ward of the offenses relating to that evidence. Therefore, we find that the state did not violate Brady by withholding potentially exculpatory evidence from Ward.
 {¶ 39} Accordingly, we overrule Ward's third assignment of error.
 V. {¶ 40} In his fourth assignment of error, Ward contends that newly discovered evidence, i.e., school records show that the victim did not miss any school in September, contradicts the victim's testimony.
 {¶ 41} Generally, a decision on a motion for a new trial is within the discretion of the trial court. State v. Scheibel (1990),55 Ohio St.3d 71, paragraph one of the syllabus, certiorari denied (1991),499 U.S. 961; Toledo v. Easterling (1985), 26 Ohio App.3d 59, 61. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Clark (1994), 71 Ohio St.3d 466, 470;State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 42} Crim.R. 33(A)(6) provides, "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such *Page 14 
affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."
 {¶ 43} In order to prevail on a motion for a new trial based on newly discovered evidence, the offender bears the burden of demonstrating to the trial court that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."Petro, supra, at syllabus. See, also, State v. Hawkins (1993),66 Ohio St.3d 339, 350.
 {¶ 44} Here, Ward's newly discovered evidence claim meets the second and fifth factors of Crim.R. 33(A). He discovered the school records after the trial, and the records are not merely cumulative to the evidence introduced at trial. See Crim.R. 33(A)(2), (5). But to prevail, Ward must prove all six factors in Crim.R. 33(A). See, e.g., State v.Barber (1982), 3 Ohio App.3d 445, 447.
 {¶ 45} Ward did not prove the first, third, fourth, and sixth factors in Crim.R. 33(A). The school records would probably not change the result of the trial; Ward could have discovered the records before the trial; and the records are questionable as material evidence. See Crim.R. 33(A)(1), (3), (4). And, by Ward's own admission, the purpose of the school attendance record evidence is *Page 15 
to impeach the victim's credibility, which is inapposite to Crim.R. 33(A)(6). Therefore, we find that the trial court did not abuse its discretion when it denied Ward's motion for a new trial.
 {¶ 46} Accordingly, we overrule Ward's fourth assignment of error.
 VI. {¶ 47} In his fifth assignment of error, Ward contends that even if the errors committed at trial were harmless, the cumulative effect of all the errors deprived him of a fair trial.
 {¶ 48} "Errors that are separately harmless may, when considered together, violate a person's right to a fair trial." State v.Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448. However, harmless or nonprejudicial "errors cannot become prejudicial by sheer weight of numbers" alone. State v. Hill (1996), 75 Ohio St.3d 195, 212. See, also,State v. Yarbrough, 104 Ohio St.3d 1, 19, 2004-Ohio-6087.
 {¶ 49} Before a reviewing court can find "cumulative error" present, it must first find that multiple errors were committed at trial.Madrigal at 398. Secondly, it must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353.
 {¶ 50} Here, Ward has not demonstrated that any errors occurred, let alone multiple errors. Therefore, Ward's assignment of error has no merit.
 {¶ 51} Accordingly, we overrule Ward's fifth assignment of error.
 VII. *Page 16 {¶ 52} In his sixth and last assignment of error, Ward contends that the trial court erred by sentencing him on his rape offenses to non-minimum and consecutive sentences in violation of Foster, supra.
 {¶ 53} The trial court sentenced Ward to non-minimum sentences of nine years in prison for each of the six counts of rape. The trial court ordered that all six sentences shall run consecutive to one another.
 {¶ 54} Pursuant to R.C. 2929.14(B), the trial court made the following findings for imposing non-minimum sentences: (1) "[T]he shortest prison term will demean the seriousness of the Defendant's conduct." And, (2) "[T]he shortest prison term will not adequately protect the public from future crime by the Defendant or others."
 {¶ 55} Pursuant to R.C. 2929.14(E), the trial court made the following findings for imposing consecutive sentences: (1) "Consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the seriousness of the Defendant's conduct and the danger the defendant poses to the public." (2) "[T]he harm caused by the Defendant was so great or unusual that no single prison term for any one of the offenses committed as part of a course of conduct adequately reflects the seriousness of the Dendant's conduct." And, (3) "[T]he Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant." The court also provided fourteen reasons for imposing the consecutive sentences. *Page 17 
 {¶ 56} The Foster court found parts of Ohio's felony-sentencing scheme unconstitutional. It based its decision on Apprendi v. New Jersey
(2000), 530 U.S. 466, 490, and Blakely v. Washington (2004),542 U.S. 296. The unconstitutional provisions include R.C. 2929.14(B), which relates to the imposition of non-minimum sentences, and R.C.2929.14(E)(4), which relates to the imposition of consecutive sentences. Following Blakely, the Foster court ruled that the sentencing criteria contained within R.C. 2929.14(B) and 2929.14(E)(4) are unconstitutional "because of the requirement for judicial findings of fact beyond those determined by the jury or admitted by the defendant." State v.Elmore 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 137, citingFoster.
 {¶ 57} The Foster court severed the unconstitutional provisions of Ohio's sentencing code, including R.C. 2929.14(B) and 2929.14(E)(4), remanded the matter for re-sentencing and gave trial courts full discretion to impose prison sentences within the statutory range without the requirement of making findings or giving their reasons for imposing non-minimum or consecutive sentences. Foster ¶ 100.
 {¶ 58} Here, we find that the trial court's fact findings in support of non-minimum and consecutive sentences violated Foster. The trial court's reliance on unconstitutional sentencing statutes when imposing non-minimum and consecutive sentences on the rape offenses, violated Ward's Sixth Amendment right to a jury under the United States Constitution. *Page 18 
 {¶ 59} The state contends, however, that Ward waived any constitutional error because it did not "raise this issue that the Ohio sentencing guidelines were unconstitutional[.]" It cites State v.Ratliff, Franklin App. No. 06AP-84, 2006-Ohio-5785 in support.
 {¶ 60} Ratliff provided that while R.C. 2929.14(B) was declared unconstitutional by Foster after the defendant was sentenced, theFoster court relied on United States Supreme Court cases that were decided before the defendant's sentence. Thus, the Ratliff court concluded that the defendant was required to raise the issue before his sentencing.
 {¶ 61} Here, the most compelling reason for not finding a waiver is because the relevant facts in this case are identical to theFoster facts. In Foster, the defendant failed to object to the trial court's imposition of non-minimum, consecutive sentences.Foster at ¶ 17. Ward also appeals from the trial court's imposition of non-minimum, consecutive sentences. The Foster court refused to undertake a plain error analysis and determined that the defendant did not knowingly waive his Sixth Amendment rights. Id. at ¶¶ 30-31. Specifically, the Court held that "no one could have predicted thatBlakely would extend the Apprendi doctrine to redefine `statutory maximum'." Id. at ¶ 31. Further, the Foster court noted that although it refused to hear the portion of the Quinones' appeal involving waiver, Quinones still benefits from the new rule even though he was sentenced before Blakely was decided, i.e., he was sentenced on October 3, 2003, and Blakely was announced on June 24, 2004. Id. at fn. 35; State v.Quinones, 112 Ohio St.3d 1494, 2007-Ohio-724 (appeal not accepted). *Page 19 
 {¶ 62} Therefore, because Ward's situation is identical to the situation in Foster, we find that Ward did not waive this issue.
 {¶ 63} Accordingly, we sustain Ward's sixth assignment of error and remand this cause to the trial court for a new sentencing hearing in accordance with Foster.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED FORRE-SENTENCING.
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion, and that the costs herein be divided evenly between the Appellant and Appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. and Abele, J.: Concur in Judgment and Opinion. *Page 1