DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Lynn Curtis, Jr., appeals from the judgment of the Medina County Court of Common Pleas convicting him of rape and tampering with evidence. This Court affirms.
 I. {¶ 2} Following a jury trial, Appellant was convicted of three counts of rape, violations of R.C. 2907.02(A)(2), and complicity to commit attempted tampering with evidence, a violation of R.C. 2923.03(A)(1), R.C. 2923.02(A), and R.C. 2921.12(A)(1). Each count of rape also included a sexually violent predator specification pursuant to R.C. 2941.148. As a result of these convictions, Appellant was sentenced to life in prison without the possibility of parole.
 {¶ 3} Appellant's convictions arise from his conduct on November 15, 2003. That day, Appellant, along with the victim, J.C., and the victim's sister, R.C., went roller skating and eventually went out and rented movies to watch. The group then returned to Appellant's father's house to watch the movies in the garage. When the group returned, several of Appellant's friends were present at the garage. However, as the evening progressed, Appellant's friends gradually left the premises. According to the testimony heard at trial, at approximately 4 a.m. Appellant and J.C. were left alone in the garage. Prior to that time, R.C. had returned to the house to sleep and the last of Appellant's friends had left the garage.[1]
 {¶ 4} The victim, age 12 at the time of the offense, testified that once Appellant was alone with him that Appellant began to tickle him. Subsequently, J.C. testified that Appellant demanded that he take his clothes off. Appellant then performed oral sex on J.C. and demanded that J.C. perform oral sex him. Following that, Appellant instructed J.C. to perform anal sex on Appellant. J.C. reluctantly complied.
 {¶ 5} Shortly after the incident, J.C. asked his sister how HIV could be contracted. R.C. explained that HIV could be transferred through sexual intercourse. At that time, J.C. revealed that Appellant had forced him to engage in oral sex. The next morning, J.C. informed R.C. and his mother that anal sex had also occurred. J.C.'s mother contacted the police, leading to Appellant's arrest and subsequent trial.
 {¶ 6} At trial, testimony was given by J.C. about the above incident. The court further heard testimony from the individuals that J.C. had informed of the assault, R.C., his mother, Detective Foraker, and a clinical counselor. J.C.'s report of the incident to each of these individuals was factually consistent. Appellant's witnesses included the individuals who were present on the November 15, 2003. Once the parties rested, the case was submitted to the jury which returned a verdict of guilty on all counts. Appellant timely appealed the convictions, raising five assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"The evidence at trial was insufficient to support appellant's rape convictions, and those convictions were against the manifest weight of the evidence."
 {¶ 7} In his first assignment of error, Appellant argues that the State produced insufficient evidence to convict him and that his convictions were against the manifest weight of the evidence. Specifically, Appellant asserts that the lack of physical evidence presented by the State requires a finding that insufficient evidence was presented in the trial court. This Court disagrees.
 {¶ 8} Initially, we note that "[w]hile the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 9} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} Appellant was convicted of rape in violation of R.C.2907.02(A)(2) which provides:
"No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
Appellant has not contested any of the elements of his crime. That is, while Appellant has styled his assignment of error to include sufficiency, he has not argued sufficiency to this Court. Rather, he asserts that the lack of physical evidence found at the crime scene coupled with conflicting statements amongst the witnesses demonstrates that his convictions were against the manifest weight of the evidence. In particular, Appellant notes that J.C. testified that he spit Appellant's ejaculate on the floor after he performed oral sex. Appellant concludes that J.C. must have fabricated his story because no evidence of Appellant's ejaculate was recovered at the scene. Appellant argues that his own witnesses clearly demonstrate that events could not have transpired as J.C. claims that they did.
 {¶ 11} We are not persuaded by Appellant's assertions. J.C. testified in detail about the sexual acts that Appellant forced him to perform. Further, each witness to whom J.C. recounted this information testified that his story remained consistent throughout the proceedings. Additionally, Detective Foraker discounted Appellant's claim that physical evidence should be present if J.C.'s story is true. Detective Foraker testified as follows:
"Again, for this case, semen on a concrete floor that is covered in grease and dirt, and in a three week time, I would be surprised if I found anything there."
Finally, we are unpersuaded that the testimony of Appellant's friends mandate a finding that his convictions were against the manifest weight of the evidence. Many of the individuals who testified left the garage hours before the incident occurred. Only one, Bill Beck, testified that he did not leave the garage until sunrise the next morning. Previously, however, Mr. Beck told the police that he had left the garage at 4 a.m. As such, the testimony of Appellant's witnesses does not cast doubt on J.C.'s credibility as Appellant contends.
 {¶ 12} Additionally, the jury heard testimony that Appellant attempted to have his father dispose of the sofa where the alleged incident took place. This testimony was presented in the form of an audiotape made when Appellant placed a call from a monitored phone to his father. During that call, Appellant instructed his father to get rid of the couch in the garage immediately. From this evidence, the jury likely inferred Appellant's consciousness of guilt.
 {¶ 13} At the close of trial, the jury was left with J.C.'s account of events and the account offered by Appellant. This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's witnesses rather than Appellant's witnesses. Statev. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. See Roberts,
supra, at 4. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"PROSECUTOR MISCONDUCT[.]"
 {¶ 14} In his second assignment of error, Appellant contends that his convictions must be reversed because of prosecutorial misconduct during his trial. Specifically, Appellant alleges that the prosecution committed misconduct during closing argument and during his questioning of J.C. This Court finds that Appellant's assignment of error lacks merit.
 {¶ 15} When examining alleged prosecutorial misconduct this Court must determine whether the remarks are improper, and if so, whether they prejudicially affected Appellant's substantial rights. State v. Lott
(1990), 51 Ohio St.3d 160, 165. However, in the instant matter, Appellant did not object to the prosecutor's alleged misconduct during his closing argument. As such, Appellant has waived all but plain error regarding these comments. State v. Slagle (1992), 65 Ohio St.3d 597, 604. As Appellant has not asserted that the trial court committed plain error, we decline to address it.
 {¶ 16} Appellant also argues that the State suborned perjury during J.C.'s testimony. We find no support in the record for Appellant's contention that J.C. committed perjury. To the contrary, the record reflects that J.C. was molested at the age of three. Once defense counsel learned of this prior molestation, he asked J.C. whether at the time of the current incident he had any knowledge of the sexual acts at hand. J.C. responded that he did not. We decline to accept Appellant's proposition that J.C.'s molestation at the age of three somehow gave him sufficient knowledge of sexual conduct to permit him to falsely accuse Appellant. We further note that the premise that a prosecutor has suborned perjury is a serious accusation. As such, we express grave concern that it has been alleged without any support from the record. While counsel is obligated to zealously represent his client, such an obligation does not grant counsel free rein to make baseless accusations. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The court erred in not allowing defense counsel to inquire of the alleged victim about a prior incident of sexual abuse."
 ASSIGNMENT OF ERROR IV
"The trial court denied [appellant] his sixth amendment right and thereby right to due process to [confrontation] when it erroneously ruled that defense counsel could not cross-examine the alleged victim about his prior sexual assault and his sexual knowledge."
 {¶ 17} As Appellant's third and fourth assignment of error are interrelated, this Court will address them together. In these assignments of error, Appellant asserts that the trial court erred in limiting his cross-examination of J.C. We disagree.
 {¶ 18} The admission of evidence is within the sound discretion of the trial court. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604. Therefore, unless the trial court has abused its discretion and the Appellant has been materially prejudiced thereby, this Court will not interfere. Id. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 19} We begin by noting that Appellant's trial counsel never inquired about J.C.'s prior incident of sexual abuse. Rather, a lengthy debate between defense counsel and the State arose when Appellant's counsel attempted to question J.C. about his sexual knowledge. Following the State's objection and contrary to Appellant's assertion on appeal, Appellant's counsel was permitted to proceed with his questioning regarding J.C.'s knowledge of sexual conduct.
 {¶ 20} While the trial court noted during the course of the State's objection that J.C.'s prior abuse was irrelevant, Appellant never raised the issue of this evidence's admissibility at any time during the proceedings below. Further, Appellant did not raise the issue of the Confrontation Clause in the trial court or attempt to introduce evidence of J.C.'s prior sexual abuse. As such, he cannot argue any alleged errors on those grounds for the first time on appeal. State v. Zabrosky (Dec. 7, 1999), 3d Dist. No. 13-99-11. Therefore, Appellant's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V
"Appellant's trial counsel provided ineffective assistance of counsel stipulating to [appellant's] prior criminal record."
 {¶ 21} In his final assignment of error, Appellant argues that his trial counsel was ineffective for stipulating to his prior criminal record. However, in his brief, Appellant has argued about the introduction of instances of similar conduct, not about the stipulation to his criminal record. We find that Appellant's trial counsel was not ineffective.
 {¶ 22} In evaluating an ineffective assistance of counsel, this Court will employ the two step process described in Strickland v. Washington
(1984), 466 U.S. 668, 687. First, we must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989), 42 Ohio St.3d 136, 141, quotingState v. Lytle (1976), 48 Ohio St.2d 391, 396. Second, this Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley, 42 Ohio St.3d at 141-142, citing Lytle,48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Appellant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48-49, quoting Strickland,466 U.S. at 687. Further, Appellant must overcome the presumption that any alleged error was not simply trial strategy. Id. at 689.
 {¶ 23} Evid.R. 404(B) provides as follows:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
In the instant matter, the testimony introduced by the State demonstrated that Appellant's prior conviction stemmed from an incident substantially similar to the incident described by J.C. In that instance, Appellant began by tickling the victim, as he did here. In turn, Appellant forced the victim to perform oral sex and performed oral sex on the victim, the same circumstances presented here. As such, the evidence demonstrated that Appellant had previously acted in a similar manner. Accordingly, any objection by Appellant's trial counsel would have been fruitless. As counsel was not required to raise objections that lack merit, Appellant has not demonstrated ineffective assistance of counsel. See In re Spence (Mar. 28, 2001), 9th Dist. No. 99CA007522. Accordingly, Appellant's fifth assignment of error is overruled.
 III. {¶ 24} Appellant's assignments of error are overruled, and the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Carr, J. Concur.
[1] While one of the defense witnesses testified that he remained in the garage all night, the jury as the trier of fact was free to determine his credibility as it deemed proper.