The STATE of Ohio, Appellee,

v.

DICKESS, Appellant.

[Cite as *State v. Dickess,* 174 Ohio App.3d 658, 2008-Ohio-39.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 06CA3128.

Decided Jan. 3, 2008.

662

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel, Assistant Prosecuting Attorney, for appellee.

Jessica A. Little, for appellant.[1]

---

1. Different counsel represented Dickess during the trial court proceedings.

Per Curiam.

{¶ 1} Christopher L. Dickess appeals the trial court's judgment convicting him of aggravated burglary, aggravated robbery, theft, and a firearm specification. On appeal, he contends that the trial court erred by overruling his motion to suppress the victim's pretrial voice identification because the law-enforcement officer presented the victim with only one male voice to hear, a method that was unnecessarily suggestive and resulted in a substantial likelihood of misidentification. Because the victim expressed complete certainty about his voice identification of Dickess, and because even if the procedure was unnecessarily suggestive, we find no substantial likelihood of misidentification, we disagree. Dickess next contends that the trial court committed plain error by instructing the jury that it could consider his prior conviction for impeachment purposes when he did not testify at trial. Because Dickess invited the error, and because the trial court, pursuant to Evid.R. 609(A)(2) and Evid.R. 806, properly allowed the state to introduce evidence regarding Dickess's prior conviction at trial, we disagree.

{¶ 2} Dickess next contends that the trial court committed plain error by instructing the jury that in order to convict him of theft, it had to find that the value of the property involved was $5,000 or more, when the indictment did not specify that the property involved was $5,000 or more. Because the indictment explicitly alleged a fourth-degree felony theft offense, which by definition involves property of $5,000 or more, we disagree. Dickess next contends that the state failed to present sufficient evidence to support the firearm specification because the state did not present any evidence that the gun allegedly used in the crime was real or operable. Because, after viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the firearm specification proven beyond a reasonable doubt, we disagree. For the same reason, he also contends that his conviction on the firearm specification is against the manifest weight of the evidence. Because substantial evidence supports his conviction of the firearm specification, we disagree. Finally, Dickess contends that his trial counsel was ineffective for (1) failing to object to the trial court's jury instructions regarding his prior conviction and the theft offense, (2) failing to object to testimony of his prior conviction, and (3) failing to object to testimony of his involvement in another recent robbery. Because we find that counsel's performance was neither deficient nor prejudicial, we disagree. Accordingly, we overrule all of Dickess's assignments of error and affirm the judgment of the trial court.

## I

{¶ 3} On the morning of April 25, 2006, two individuals entered the home of Michael Wright, his wife, and his son, Lucas. At the time, neither Michael nor

his wife was home. Lucas was home alone, sleeping in his bed, and awoke to a loud thud. He then saw a man, who was wearing a mask, in his bedroom. The man was pointing a gun at his face. The man directed Lucas not to look at him and not to move. He then ordered Lucas to stand up, put his hands behind his head, and face the window. The man told Lucas to lie down and stated that if Lucas resisted, he would kill him. The man asked Lucas whether there were any drugs, weapons, or money in the house and bound Lucas's hands behind his back. He told Lucas that if he lied, he would kill him. The man later led Lucas downstairs and told him to lie down. Lucas heard two individuals talking and ransacking the home. He heard footsteps coming toward him and saw someone lean over him. The next awareness he had, his head hurt and he thought the man had shot him. He eventually learned that one of the individuals had hit him with a liquor bottle. The man then bound Lucas's feet and tied his arms even tighter. He dragged Lucas down the hallway and told Lucas that if he moved, they would kill him.

{¶ 4} The house went silent for a period of time, and Lucas eventually yelled, "Hello," but did not hear a response. He managed to struggle to his feet and to reach his father's truck. A neighbor then spotted him and helped him to his nearby aunt's house, where they summoned help.

{¶ 5} At the hospital, doctors discovered that Lucas had suffered multiple skull fractures and swelling of the brain due to a concussion. While there, Lucas met with the investigating officer, Scioto County Sheriff's Detective Denver Triggs. Lucas told the detective that a couple of days earlier, someone named "Chris" had stopped by the house, looking for Lucas's father. Detective Triggs then discovered Dickess's name and began investigating further.

{¶ 6} A few days later, Detective Triggs met with Lucas and played a surreptitious audio recording of a male voice and asked Lucas whether he could identify the voice. With certainty, Lucas identified the voice as Dickess's.

{¶ 7} The Scioto County Grand Jury subsequently returned an indictment charging Dickess with (1) aggravated burglary, in violation of R.C. 2911.11(A)(1), (2) aggravated robbery, in violation of R.C. 2911.01(A)(1), (3) felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2), and (4) theft, in violation of R.C. 2913.02(A)(1) and (A)(4). The indictment also contained a firearm specification.

{¶ 8} Dickess pleaded not guilty and later filed a motion to suppress the victim's pretrial identification. However, the record does not indicate that the trial court held a hearing on the motion, and there is no transcript of such a hearing. There is no other entry or document relating to the motion.

{¶ 9} At trial, Lucas testified that he obeyed the intruder's instructions because the intruder "had a gun [and Lucas] wasn't going to test that." Lucas explained

that Detective Triggs played a voice recording for him to see whether he could identify the voice. Lucas told the detective, "Without a doubt, it's the same voice" that he heard during the home invasion. In explaining his certainty, Lucas stated: "It's a very distinct voice, but the way he pronounces some of his vowel sounds, like when he asked if I thought he was stupid, the way he said stupid I mean it's unmistakable and again listening to the recording that he had, the vowel sounds matched up without any doubt, that was the same voice." He identified the voice as Dickess's voice, and he stated that he did not have any doubt that Dickess was the man in his home on the morning of April 25. Lucas further explained that when he first listened to the tape, he recognized the voice within a minute. He stated that the "tone" and "uniqueness of his voice [were] right, but [he] listened a little bit longer just to make sure the syllables and the vowels were there." Lucas testified that he saw no need to listen to any other voice samples, because he was "100% sure" that the voice belonged to Dickess. He stated that he was certain about his voice identification, because the man had a gun pointed at him and he listened "very clear[ly.]"

{¶ 10} Angel Griffith testified that Dickess is her cousin. She explained that her husband, Bob, had mentioned while in the presence of Frankie Stephenson, Dickess's sister, that there was a reward for the stolen items. Frankie later called and asked for the Wrights' phone number. Angel then called the Wrights and advised them that Frankie wanted to set up a meeting. Angel stated that Michael Wright and Frankie met at her house. She testified that Michael showed Frankie a list of the stolen items. Frankie looked at the list and stated that several of the DVDs were at her sister's house and that she would try to get the DVDs and put them in a Ziploc bag so they could be fingerprinted. She also apologized for what had happened. When Angel saw Frankie about a week after this meeting, Frankie stated that her sister's home had been broken into and that the items were stolen.

{¶ 11} Michael Wright testified that Dickess had worked for him. He stated that the home intruders stole (1) a nickel-plated .38–caliber revolver, valued at approximately $850, (2) his wife's "one of a kind necklace that was made from a ring" that her grandmother had left her, valued at $4,500, (3) $150 in cash, and (4) several video games and DVDs, valued at around $1,500. Michael testified that he tried to recover those items from Frankie, Dickess's sister. He explained that Frankie called him and stated that she wanted to talk to him and asked him to bring a list of the stolen items. Michael offered to buy back anything on the list. Frankie stated that she thought "they had some of that stuff and that she would get back to [Michael]." However, Frankie never contacted him again.

{¶ 12} When the state called Frankie to the stand, she denied claims that she offered to help recover the Wrights' stolen property.

{¶ 13} Detective Triggs testified that when Lucas told him that a man by the name of "Chris" had stopped by the house a few days before the invasion, he then discovered that it was Dickess. Detective Triggs stated that he ran a computerized criminal history and found that Dickess had a history of aggravated robbery and burglary. After Dickess was arrested, Detective Triggs conducted two interviews with Dickess. He recorded both interviews, which were played for the jury but not transcribed. During these interviews, Dickess does not confess to being involved in the home invasion at the Wrights' home. However, he expresses knowledge of intimate details of the crime, supposedly gained through one of his acquaintances. Also during these interviews, both Dickess and Detective Triggs made numerous references to Dickess's prior convictions and recent involvement in other crimes.

{¶ 14} After the state rested, Dickess presented the testimony of two witnesses, in an attempt to establish that he was at home during the time of the home invasion at the Wrights' home.

{¶ 15} The jury subsequently found Dickess guilty of aggravated burglary, aggravated robbery, and theft. The jury found the value of the property involved in the theft offense to be $5,000 or more. The jury additionally found that the state proved the firearm specification. The court later sentenced Dickess to 23 years' imprisonment for all the offenses.

{¶ 16} Dickess now appeals and raises the following assignments of error: "I. The trial court erred when it overruled the appellant's motion to suppress the alleged victim's pre-trial voice identification the[r]eby violating appellant's due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution." "II. The trial court committed plain error when it gave a jury instruction concerning use of the appellant's prior conviction for impeachment purposes when appellant did not testify." "III. It was plain error when the trial court erron[e]ously instructed the jury on elements of the theft offense not specified in the indictment." "IV. The jury verdict was supported on insufficient evidence as to the firearm specification thereby violating appellant's right to due process of law." "V. The jury verdict on the firearms specification was against the weight of the evidence denying appellant due process of law." "VI. Appellant's right to a fair trial was prejudiced by ineffective assistance of counsel."

## II

{¶ 17} In his first assignment of error, Dickess argues that the trial court erred by overruling his motion to suppress the victim's pretrial voice identification because it was impermissibly suggestive and created a substantial likelihood of misidentification.

## A

### Procedural Issues

{¶ 18} Initially, we note that the trial court did not explicitly overrule Dickess's motion to suppress. The record before this court does not contain any entry relating to the motion to suppress. However, when a trial court fails to rule on a motion, we presume that the court overruled the motion. See *State v. Brungs*, Pickaway App. No. 05CA18, 2005-Ohio-5776, 2005 WL 2858112; *State v. Binegar* (Aug. 13, 2001), Highland App. No. 00CA21, 2001 WL 1913971.

{¶ 19} Moreover, to the extent that Dickess claims that the trial court erred by failing to hold a hearing regarding his motion to suppress, no objection appears in the record as to the court's failure to hold a hearing. He should have objected before trial, and his failure to do so waives any error. See *State v. Djuric*, Cuyahoga App. No. 87745, 2007-Ohio-413, 2007 WL 274373, at ¶ 32.

## B

### Standard of Review

{¶ 20} Our review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve questions of fact and evaluate witness credibility. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. See *State v. Landrum* (2000), 137 Ohio App.3d 718, 722, 739 N.E.2d 1159; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 145, 675 N.E.2d 1268. Accepting those facts as true, we must independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. See *Burnside* at ¶ 8.

{¶ 21} Because in the instant case, a transcript of the motion-to-suppress-evidence hearing does not exist, we examine the propriety of the admissibility of the victim's voice identification based upon the evidence presented at trial.

## C

### Voice Identification

{¶ 22} Regarding a motion to suppress a victim's pretrial voice identification of a suspect, the Ohio Supreme Court has stated that "due process requires a court to suppress [the victim's] identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was

unreliable under all the circumstances." *State v. Waddy* (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, citing *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; and *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. Thus, a trial court need suppress an identification only when (1) the identification procedures that the law enforcement officers used were unnecessarily suggestive and (2) the identification was unreliable under the totality of the circumstances.

{¶ 23} Although courts have criticized the practice of using a single voice exemplar or photo when seeking a witness identification as suggestive, this practice is not per se improper and does not necessarily result in the inadmissibility of the identification. See *State v. Gross*, 97 Ohio St.3d 121, 127, 2002-Ohio-5524, 776 N.E.2d 1061; *State v. Broom* (1988), 40 Ohio St.3d 277, 284, 533 N.E.2d 682; see also *In re Carter*, Jackson App. Nos. 04CA15 and 04CA16, 2004-Ohio-7285, 2004 WL 3090250. Moreover, notable flaws in the identification procedure do not, per se, preclude admission of the subsequent in-court identification. See *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 9 O.O.3d 71, 377 N.E.2d 1008; *State v. Merrill* (1984), 22 Ohio App.3d 119, 121, 22 OBR 320, 489 N.E.2d 1057. Instead, the ultimate inquiry is "whether, based on the totality of the circumstances, there is a very substantial likelihood of misidentification." *State v. Madison* (1980), 64 Ohio St.2d 322, 332, 18 O.O.3d 491, 415 N.E.2d 272. As noted in *Manson*, 432 U.S. at 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, "reliability is the linchpin in determining the admissibility of identification testimony." Thus, even if the identification procedure was suggestive or contained other flaws, the subsequent identification is admissible as long as it is reliable. *Manson*; *Moody*.

{¶ 24} An identification is reliable as long as the police procedure used does not create " 'a very substantial likelihood of irreparable misidentification.' " *Waddy*, 63 Ohio St.3d at 439, 588 N.E.2d 819, quoting *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253; see also *Neil*, 409 U.S. at 198, 93 S.Ct. 375, 34 L.Ed.2d 401. In evaluating whether the procedure created a very substantial likelihood of irreparable misidentification, courts should look to the following key factors: (1) the witness's opportunity to view (or, in the case of a voice identification, to hear) the defendant during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the witness's certainty, and (5) the time elapsed between the crime and the identification. *Waddy*, 63 Ohio St.3d at 439, 588 N.E.2d 819, citing *Neil*, 409 U.S. at 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401.

{¶ 25} In *Waddy*, the court determined that a witness's identification, although unnecessarily suggestive, did not create a very substantial likelihood of misidentification. The court noted that the witness "had an excellent opportunity to hear the burglar's voice. He was in her home for half an hour and spoke several

times. She thoroughly described the burglar's manner of speaking and remembered what he said, indicating a high attention level. After [the witness] identified the voice, a detective told her to 'make sure that was the same voice that I heard the night that I was attacked'; she did not waver in her identification. Like the victim in *Neil*, 409 U.S. at 200, 93 S.Ct. at 382, 34 L.Ed.2d at 412, [this victim] 'was no casual observer,' but the victim of a protracted invasion of her home coupled with a physical assault." *Waddy*, 63 Ohio St.3d at 439, 588 N.E.2d 819.

{¶ 26} The court further observed that "[t]wo negative factors exist. [The victim's] fear could have distorted her auditory perception. Also, nearly two months elapsed between crime and identification; however, in *Neil* factors favoring reliability outweighed a seven-month gap. On balance, we find no 'very substantial' likelihood of misidentification." *Waddy*, 63 Ohio St.3d at 440, 588 N.E.2d 819.

{¶ 27} Here, even if the voice recording was unnecessarily suggestive, it was not so suggestive as to create a very substantial likelihood of irreparable misidentification. See *Gross*, supra, 97 Ohio St.3d 121, 776 N.E.2d 1061. Like the witness in *Waddy*, Lucas Wright had an excellent opportunity to hear the burglar's voice. This person was in the home for somewhere around half an hour and spoke many times to Lucas, giving commands. Lucas thoroughly described the burglar's manner of speaking and remembered what he said, indicating a high attention level. After Lucas identified the voice, he never wavered in his identification. Lucas "was no casual observer," but the victim of a protracted home invasion coupled with a physical assault. *Waddy*, supra, 63 Ohio St.3d 424, 588 N.E.2d 819. Furthermore, only a matter of days passed between the home invasion and his voice identification. The two negative factors, Lucas's fear and his head injury, are not sufficient to call the reliability of his identification into question. Therefore, the practice of playing only one voice for Lucas did not create a very substantial likelihood of irreparable misidentification.

{¶ 28} Accordingly, we overrule Dickess's first assignment of error.

### III

{¶ 29} In his second assignment of error, Dickess asserts that the trial court plainly erred by instructing the jury on his prior conviction for impeachment purposes when he did not testify at trial. Specifically, he complains that the following jury instruction was erroneous: "Testimony was introduced that Christopher Dickess was convicted of a criminal act. This testimony may be considered for the purpose of helping you test the credibility or weight to give to his statements. It cannot be considered for any other purpose." Dickess essentially asserts that because he did not testify, the court should not have allowed evidence

of his prior conviction and, thus, the court should not have mentioned his prior conviction during the jury instructions.

{¶ 30} The state asserts that the trial court properly instructed the jury and properly allowed the evidence. It observes that although Dickess did not testify, the state introduced two videotaped recordings of his interviews with Detective Triggs. The state argues that the jury was entitled to consider his prior conviction in assessing the credibility of the statements he gave to Detective Triggs and that the court appropriately so instructed the jury.

## A

## PLAIN ERROR

{¶ 31} Dickess did not object to the court's jury instruction concerning his prior conviction. Thus, we can recognize the error only if it constitutes plain error. To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected "substantial rights" (i.e., the trial court's error must have affected the trial's outcome). See *State v. Hill* (2001), 92 Ohio St.3d 191, 749 N.E.2d 274; *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240. Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Barnes*, citing *United States v. Atkinson* (1936), 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555.

{¶ 32} A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 630 N.E.2d 339; *Cleveland v. Buckley* (1990), 67 Ohio App.3d 799, 588 N.E.2d 912.

## B

## STANDARD FOR REVIEWING JURY INSTRUCTIONS

{¶ 33} Crim.R. 30(A) requires a trial court to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. In

determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See *State v. Lessin* (1993), 67 Ohio St.3d 487, 494, 620 N.E.2d 72. A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction. *State v. Mitts* (1998), 81 Ohio St.3d 223, 228, 690 N.E.2d 522. If, however, the evidence does not warrant an instruction or if an instruction is not appropriate in light of the crime charged, the trial court is not obligated to give the instruction. See *Lessin,* 67 Ohio St.3d at 494, 620 N.E.2d 72. Thus, in our review, we must determine whether the trial court abused its discretion by finding that the evidence supported the jury instruction. See *Mitts; State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; see also *State v. Elijah* (July 14, 2000), Montgomery App. No. 18034, 2000 WL 968781. An abuse of discretion exists if the trial court's attitude was unreasonable, arbitrary, or unconscionable. See, e.g., *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167.

{¶ 34} Because the propriety of the trial court's prior-conviction jury instruction rests upon the propriety of the court's allowance of that evidence, we first must ascertain whether the court plainly erred by admitting the evidence of Dickess's prior conviction.

## C

### EVIDENCE OF PRIOR CONVICTION

{¶ 35} First, we observe that not only did Dickess's counsel fail to object to the testimony concerning Dickess's prior conviction, he also volunteered the information during his opening statement. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254, 648 N.E.2d 1355, citing *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950; *Lester v. Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus. Consequently, because Dickess's counsel volunteered the information regarding the prior conviction, Dickess invited any error associated with the trial court's admission of the evidence. See *State v. Daniels,* Lorain App. No. 03CA008261, 2004-Ohio-828, 2004 WL 344128 (concluding that defendant invited error regarding prior conviction by volunteering the information).

{¶ 36} Even if Dickess had not invited the error, the trial court did not abuse its discretion by admitting the evidence under Evid.R. 609(A)(2) and Evid.R. 806.

{¶ 37} The admission or exclusion of evidence rests within the sound discretion of the trial court. See, e.g., *State v. Robb* (2000), 88 Ohio St.3d 59, 68,

723 N.E.2d 1019. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence. See, e.g., *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. See, e.g., *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 38} "When an accused testifies at trial, Evid.R. 609(A)(2) allows the state to impeach the accused's credibility with evidence that the accused was convicted of an offense punishable by imprisonment in excess of one year and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, at ¶ 132. Even when the accused chooses not to take the stand, thereby ostensibly avoiding the potential for the prosecution to introduce impeachment evidence, such as prior convictions, those prior convictions may still be introduced into evidence through Evid.R. 806.[2] See Giannelli and Snyder, Ohio Evidence (2001), Sections 609.7 and 806.5 (stating that "an accused may be impeached even though he never testified" and that "Rule 806 has even been held to permit impeachment of a defendant whose out-of-court statements were offered by the prosecution * * * and thus has done nothing to put his credibility at issue"); Katz and Giannelli, Ohio Criminal Law (2007), Section 23:2; Cordray, Evidence Rule 806 and the Problem of Impeaching the Nontestifying Defendant (1995), 56 Ohio St. L.J. 495, 501 (stating that "even a criminal defendant who chooses not to testify may nevertheless be subject to impeachment with his prior convictions if he becomes a declarant at his trial," but criticizing this result).

{¶ 39} In *State v. Block* (Apr. 11, 1991), Auglaize App. No. 2–90–4, 1991 WL 53735, the court determined that the trial court did not improperly instruct the jury regarding the defendant's prior conviction when the evidence of his prior conviction was introduced through Evid.R. 609(A)(2) and Evid.R. 806. The court explained: "Since Evid.R. 609 permits impeachment of the Appellant by use of prior criminal convictions the same impeachment is permitted of the declarant of

---

2. {¶ a} Evid.R. 806 states:

{¶ b} (A) When a hearsay statement, or a statement defined in Evid.R. 801(D)(2), (c), (d), or (e), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness.

{¶ c} (B) Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

{¶ d} (C) Evidence of a declarant's prior conviction is not subject to any requirement that the declarant be shown a public record.

{¶ e} * * * *

a hearsay statement under Evid.R. 806 as if the Appellant were testifying." But see *State v. Martin* (June 19, 1987), Greene App. No. 86CA59, 1987 WL 12956 (stating that the use of prior convictions to impeach declarant-defendant who chose not to testify "is beyond the scope of Evid.R. 609(A), and without question, [the trial court's] instruction was erroneous," but otherwise upholding the court's jury instruction).

{¶ 40} Here, Dickess chose not to testify. However, the state used his prior out-of-court statements at trial. Thus, under Evid.R. 609(A)(2) and Evid.R. 806, the trial court could allow evidence of Dickess's prior conviction. Because the court properly allowed the evidence, it appropriately gave the jury a limiting instruction regarding his prior conviction. See *State v. Goney* (1993), 87 Ohio App.3d 497, 502, 622 N.E.2d 688. Therefore, Dickess cannot show that the trial court plainly erred by giving the jury the limiting instruction.

{¶ 41} Accordingly, we overrule Dickess's second assignment of error.

## IV

{¶ 42} In his third assignment of error, Dickess contends that the trial court plainly erred by instructing the jury on the elements of the theft offense when the indictment did not specify those elements. Dickess notes that the indictment charged that he committed theft of "multiple firearms" and specified the offense as a fourth-degree felony. Dickess observes that the trial court's theft jury instruction did not advise the jury that the property involved must be a firearm or have a value of $5,000 or more, but that the verdict form included the element of a property value of $5,000 or more. He further claims that the indictment did not adequately notify him that he was to defend against a fourth-degree felony theft offense of property valued at $5,000 or more. Dickess claims: "The finding of the jury of a property value of $5,000 or more jacked up the offense from a misdemeanor to an F–4."

## A

### JURY INSTRUCTIONS

{¶ 43} Dickess again failed to object to the jury instructions. Thus, he has waived any alleged error unless it amounts to plain error. See *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶ 56; *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88.

{¶ 44} "When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in

a matter materially affecting the complaining party's substantial rights." *State v. Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, 861 N.E.2d 823, at ¶ 29, citing *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, and *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, 790 N.E.2d 1222. We must not reverse a conviction due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict. Id., citing *Parma Hts. v. Jaros* (1990), 69 Ohio App.3d 623, 630, 591 N.E.2d 726; *State v. Speakman* (Mar. 27, 2001), Pickaway App. No. 00CA035, 2001 WL 315198.

{¶ 45} Here, the court's jury instructions, viewed as a whole, are not erroneous and conform to the offense charged in the indictment. The court instructed the jury as to the elements of a theft offense. In its explanation of the verdict forms, the court instructed the jury that it must enter a finding as to the value of the property. Thus, before the court discharged the jury, it adequately advised it that before it could find Dickess guilty of a fourth-degree felony theft offense, it must find that the value of the property was $5,000 or more. There is no danger that the court's jury instruction induced an erroneous verdict. Thus, Dickess's argument that the trial court committed plain error when instructing the jury regarding the theft offense is meritless.

## B

## NOTICE

{¶ 46} Dickess further asserts that the indictment did not sufficiently apprise him that he was to defend against a fourth-degree felony offense, because the indictment did not specify the value of the property involved.

{¶ 47} Section 10, Article I of the Ohio Constitution states: "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." *State v. Headley* (1983), 6 Ohio St.3d 475, 478–479, 6 OBR 526, 453 N.E.2d 716. This rule ensures that a criminal defendant will not be "surprised" by a charge. See *In re Reed* (2002), 147 Ohio App.3d 182, 769 N.E.2d 412, at ¶ 33; see also *State v. Davis*, Highland App. No. 06CA26, 2007-Ohio-2249, 2007 WL 1376934.

{¶ 48} Dickess's argument that he lacked notice that he was defending against a fourth-degree felony theft offense is unavailing. The theft offense reads:

"Dickess did: with purpose to deprive the owner of property, to wit: multiple firearms, knowingly obtain or exert control over said property, without consent of the owner or person authorized to give consent * * *." The indictment explicitly stated that it was a fourth-degree felony. Thus, Dickess needed only to consult R.C. 2913.02(B)(1) to ascertain the elements of a fourth-degree felony theft offense. That section states: "If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree." Consequently, Dickess's assertions that he was surprised that he had to defend against a fourth-degree felony charge and that the jury's finding "jacked up" the degree of the offense are meritless.

{¶ 49} Accordingly, we overrule Dickess's third assignment of error.

V

{¶ 50} In his fourth assignment of error, Dickess argues that the record does not contain sufficient evidence to support the firearm-specification finding. Specifically, he contends that the state failed to present sufficient evidence to show that the firearm was real or operable.

{¶ 51} When reviewing the sufficiency of the evidence, appellate courts look to the adequacy of the evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all essential elements of the offense beyond a reasonable doubt. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, at ¶ 34; *Jenks,* paragraph two of the syllabus; see also *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 52} This test raises a question of law and does not allow us to weigh the evidence. *State v. Ward,* Meigs App. No. 05CA13, 2007-Ohio-2531, 2007 WL 1518611, at ¶ 17. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 53} To prove a firearm specification, the state must show that the defendant possessed an operable firearm. See *State v. Obsaint,* Hamilton App. No. C–060629, 2007-Ohio-2661, 2007 WL 1574618, at ¶ 18, citing R.C. 2941.141, 2941.145, and 2911.01(A)(1); see also R.C. 2923.11(B) (defining a "firearm" as "a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant"). The state may use circumstantial evidence to establish that the defendant possessed an operable firearm. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph one of the syllabus; *State v. Knight,* Greene App. No. 2003CA14, 2004-Ohio-1941, 2004 WL 830043, at ¶ 19 ("both a weapon's existence and its operability may be inferred from the facts and circumstances"). A victim's belief that the weapon is a gun, together with the defendant's intent to create and use the victim's belief for the defendant's own criminal purposes, is sufficient to prove a firearm specification. See *State v. Jeffers* (2001), 143 Ohio App.3d 91, 757 N.E.2d 417 (sufficient evidence existed to support firearm specification when robbery defendant kept hand in pocket and told convenience store that he would "blow [her] head off" if she did not comply); *Obsaint* (defendant's written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm); *State v. Greathouse,* Montgomery App. No. 21536, 2007-Ohio-2136, 2007 WL 1297181 (sufficient evidence supported firearm specification even though the victim never saw the gun, when the defendant told the victim that he had a gun and that he would kill her and dump her body if she did not comply).

{¶ 54} Here, the state presented sufficient circumstantial evidence that Dickess possessed an operable firearm. The victim saw the gun. Dickess told the victim that he would kill him if he did not cooperate. The victim obviously took these threats seriously. Dickess's representations are sufficient to prove the firearm specification. The victim believed that Dickess possessed a gun, and Dickess used that belief to fulfill his criminal purposes.

{¶ 55} Accordingly, we overrule Dickess's fourth assignment of error.

## VI

{¶ 56} In his fifth assignment of error, appellant contends that the firearm specification finding is against the manifest weight of the evidence. He raises the same argument asserted in his fourth assignment of error concerning whether he possessed an operable firearm.

{¶ 57} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence. *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, at ¶ 43–44. In determining whether a criminal conviction is against the manifest weight of the evidence, we

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. See id. at ¶ 44; *Thompkins,* supra. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

{¶ 58} We reject Dickess's manifest-weight argument for the same reasons that we rejected Dickess's argument that the state failed to present sufficient evidence to support the firearm specification. Nothing in the record indicates that the trier of fact committed a manifest miscarriage of justice by concluding that Dickess possessed an operable firearm.

{¶ 59} Accordingly, we overrule Dickess's fifth assignment of error.

## VII

{¶ 60} In his sixth assignment of error, appellant asserts that trial counsel rendered ineffective assistance of counsel. He complains that trial counsel was ineffective for the following reasons: (1) counsel did not object to the jury instructions regarding his prior conviction and the theft offense, (2) counsel did not object to Detective Triggs's testimony concerning Dickess's history of aggravated robbery and burglary, and (3) counsel did not object to testimony concerning Dickess's involvement in another recent robbery in another county.

## A

### STANDARD FOR EVALUATING CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 61} In order to prove a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, i.e., not reasonably competent, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.

{¶ 62} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White* (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Furthermore, courts should not simply assume the existence of prejudice, but require that it be affirmatively shown. See *State v. Hairston*, Scioto App. No. 06CA3089, 2007-Ohio-3707, 2007 WL 2070366, citing *State v. Clark*, Pike App. No. 02CA684, 2003-Ohio-1707, 2003 WL 1756101, at ¶ 22; *State v. Tucker* (Apr. 2, 2002), Ross App. No. 01CA2592, 2002 WL 507529; *State v. Kuntz* (Feb. 26, 1992), Ross App. No. 1691, 1992 WL 42774.

{¶ 63} If one prong of the *Strickland* test disposes of a claim of ineffective assistance of counsel, we need not address both aspects. *State v. Martin*, Scioto App. No. 06CA3110, 2007-Ohio-4258, 2007 WL 2355820.

## B

### JURY INSTRUCTIONS

{¶ 64} Dickess first asserts that trial counsel performed deficiently by failing to object to the trial court's jury instructions regarding his prior conviction and the theft offense.

{¶ 65} In our discussions of Dickess's second and third assignments of error, we determined that the trial court did not err in giving either the prior-conviction or the theft-offense instruction. Thus, counsel's failure to object would not have affected the outcome of the trial. See *State v. Curtis*, Medina App. No. 04CA0067–M, 2005-Ohio-2143, 2005 WL 1026694 (stating that counsel is not required to raise objections that lack merit). Therefore, Dickess cannot demonstrate prejudice.

## C

### FAILURE TO OBJECT TO PRIOR CONVICTION EVIDENCE

{¶ 66} Dickess next argues that trial counsel performed deficiently by failing to object to Detective Triggs's testimony concerning his prior conviction.

{¶ 67} Within Dickess's second assignment of error, we addressed his argument that the trial court erred by permitting Detective Triggs to testify regarding Dickess's prior conviction. We concluded that the trial court properly allowed the evidence. Consequently, counsel's objection would have been fruitless. Thus, Dickess cannot establish any prejudice resulting from trial counsel's alleged deficiency in objecting to this evidence.

D

## FAILURE TO OBJECT TO OTHER-ACTS EVIDENCE

{¶ 68} Dickess complains that trial counsel was ineffective for failing to object to testimony that Dickess was a suspect in other robberies and/or burglaries.

{¶ 69} As we stated earlier, the admission or exclusion of evidence rests within the sound discretion of the trial court. Thus, absent an abuse of discretion, we will not disturb a trial court's ruling regarding the admissibility of evidence.

{¶ 70} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show [that he acted] in conformity therewith. It may, however, be admissible for other purposes, such as * * * identity * * *." The admissibility of other-acts evidence is carefully limited because a substantial danger exists that a jury may convict solely because it assumes that a defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. This danger increases when the other acts are similar to the charged offense, or are of an inflammatory nature. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661. Nevertheless, evidence of other crimes may be admissible when integral to the identification of a perpetrator. See *Hairston* at ¶ 36, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 169, 555 N.E.2d 293; *State v. Vason*, Cuyahoga App. No. 88069, 2007-Ohio-1599, 2007 WL 1018644, at ¶ 18; *State v. Kellon* (Sept. 20, 2001), Cuyahoga App. No. 78668, 2001 WL 1134865.

{¶ 71} "Evidence of other crimes which is permitted to come before the jury due to defense counsel's neglect, ignorance or senseless disregard of the defendant's rights and which bears no reasonable relationship to a legitimate trial strategy has been held sufficient to render the assistance of counsel ineffective." *State v. Martin* (1987), 37 Ohio App.3d 213, 214, 525 N.E.2d 521.

{¶ 72} In the case at bar, defense counsel reasonably could have concluded that an objection to the evidence would not prove fruitful, because it would be admissible under Evid.R. 404(B). Dickess presented alibi witnesses and claimed that he was not one of the perpetrators of the Wright home invasion. Thus, identity was at issue. Because identity was at issue, Evid.R. 404(B) permitted evidence of similar, recent crimes that Dickess allegedly committed. While the record is not fully developed regarding the similarity in crimes, it is an appellant's duty to affirmatively show prejudicial error in the record. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. Furthermore, we generally will not reverse a conviction on ineffective-assistance-of-counsel grounds based upon an appellant's pure speculation as to

what the evidence might have shown. See *State v. Shadoan*, Adams App. No. 03CA764, 2004-Ohio-1756, 2004 WL 736587, at ¶ 59; see also *State v. Peterson*, Summit App. No. 23434, 2007-Ohio-2091, 2007 WL 1264202. Dickess speculates that the crimes would prove to be dissimilar and thus prohibited under Evid.R. 404(B). We must presume that defense counsel's conduct in not objecting to this evidence was competent, and, therefore, we presume that counsel did not object to evidence regarding the other recent crimes because they bore a sufficient similarity to the crimes charged in the Wright home invasion.

{¶ 73} Additionally, even without evidence of Dickess's involvement in other crimes, the victim's positive identification, if believed, overwhelmingly proves Dickess's guilt. Thus, Dickess cannot establish prejudice. See *State v. Parker*, Washington App. No. 03CA43, 2004-Ohio-1739, 2004 WL 728249, at ¶ 13 (concluding that in light of overwhelming evidence of guilt, defendant could not establish prejudice resulting from counsel's alleged ineffectiveness); *State v. Hester*, Franklin App. No. 02AP–401, 2002-Ohio-6966, 2002 WL 31819725, at ¶ 16 (finding that overwhelming evidence of guilt prevented defendant from proving that result would have been different).

{¶ 74} Accordingly, we overrule Dickess's sixth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

HARSHA, J., concurs in judgment only.

ABELE, J., concurs in judgment and opinion as to assignments of error I, III, IV, V, and VI and dissents as to assignment of error II.

KLINE, J., concurs in judgment and opinion.