[Cite as *State v. Teal*, 2017-Ohio-7202.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellee

v.

Kenneth Teal, Jr.

Appellant

Court of Appeals Nos. L-15-1280
L-15-1281

Trial Court Nos. CR0201401007
CR0201501994

**DECISION AND JUDGMENT**

Decided: August 11, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

**Introduction**

**{¶ 1}** In these consolidated appeals, Kenneth Teal, Jr., the defendant-appellant herein, appeals his convictions for felonious assault and intimidating a witness. The cases involve Teal's physical assault of a woman and subsequent threats he made to her

while awaiting trial. Following a bench trial before the Lucas County Court of Common Pleas, Teal was convicted in both cases. For the reasons that follow, we affirm.

**Facts and Procedural History**

{¶ 2} The following evidence was offered at trial.

{¶ 3} Teal and the victim, "S.C.," met in 2011. After they met, the victim began renting a "fixer-upper" home from Teal's aunt in Lambertville, Michigan. Teal lived down the street and was supposed to be renovating the property.

{¶ 4} The victim operated an internet-based business out of her home, and Teal worked for the business sporadically. Sometime in 2012, their relationship became romantic, but it was troubled from the start.

{¶ 5} The victim described one aberrant act after another by Teal: that he would come over, uninvited, ostensibly to work, but would instead watch her; that he twice broke into her house at night, and one time she awoke to find him crawling on her floor; that he hacked into her Facebook and Verizon accounts, making it look as though she was sending messages to other people; that he installed spyware on her devices so that he could track her whereabouts; that he would show up at places shortly after she did and then refuse to leave.

{¶ 6} In the summer of 2013, the victim said that Teal began "full blown terrorizing" her, which included "hitting," "smacking" and "shoving" the victim. Teal also tracked a male friend of the victim's; he frequently called the victim a "whore." He

2.

blackmailed her, telling her that he "would destroy" her by revealing personal information about her to her parents. The victim reported Teal's behavior to the police.

{¶ 7} Teal's increasingly violent behavior caused the victim to move to an apartment in Toledo, Ohio. On December 18, 2013, Teal went, uninvited, to the victim's home. The victim testified that she repeatedly told him to leave. At one point, Teal advanced toward her, and she pushed him away and spat in his face. Teal then punched the victim in the face, causing her to spin and fall to the floor. Teal took the victim's cell phone and keys and fled the house.

{¶ 8} Within minutes, Teal returned, at which point the victim activated the recorder on her phone. An 11 minute audiotape was received as an exhibit and played for the court. It memorialized what occurred next:

{¶ 9} The victim can be heard crying, pleading and yelling. The audio reveals that the victim told Teal to "get out" 10 times; to "just go" 13 times; "I don't want you touching me" 7 times; and "please get off of me" 6 times. Teal can be heard saying "shhhhh" during many of these pleas. The victim testified that she was held down on the couch, unable to move except to turn her head. At some point, the victim bit and slapped Teal. She also told him that he was a "failure and a loser." At that point, Teal punched her with both of his closed fists, "over and over again, and again and again" as the victim begged him to stop. The victim bled profusely and threw up.

{¶ 10} When the beating was over, Teal can be heard saying, repeatedly, "Tonight I am going to die" and "I'm going to kill myself tonight," which the victim took as a sign

3.

that he was going to kill her and then commit suicide. Instead, Teal left and drove away. The victim was treated for a broken nose and a cut near her eye, which resulted in a scar.

{¶ 11} On January 2, 2014, a Lucas County, Ohio grand jury indicted Teal on one count of felonious assault, in violation of R.C. 2903.11(A)(1)(D), a felony of the second degree.

{¶ 12} Teal fled out of state, but returned after Christmas. Despite a "no contact order," prohibiting him from having any contact with the victim, Teal continued to communicate with her via Skype, Facebook, text and phone. Teal told her that she did not need to cooperate with the prosecution and threatened to "destroy her" if she did. Teal proposed marriage, offered to pay her, and showed her homes for sale to convince her to move in with him. Teal sent the victim an audio recording in which he told his children that he was going to have to go away for a long time. Again, he threatened to divulge personal information about the victim in an effort to hurt her business and personal relationships.

{¶ 13} On June 24, 2015, Teal was indicted in a second case, for one count of menacing by stalking, in violation of R.C. 2903.211(A)(1)(B)(2)(E), a felony of the fourth degree and one count of intimidation of attorney, victim or witness in a criminal case, in violation of R.C. 2921.04(B), a felony of the third degree. The cases were consolidated, and a bench trial was held in September of 2015. The trial court found Teal guilty of felonious assault and intimidation. It sentenced him to serve 6 years and 24 months, as to the respective convictions. The court found him not guilty of menacing.

4.

**{¶ 14}** Teal was appointed appellate counsel and asserts six assignments of error for our review.

### Assignments of Error

1. The trial court erred to the prejudice of Appellant by improperly allowing Evid.R. 404(B) evidence to be introduced by the state.

2. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution.

3. The trial court committed error to the prejudice of Appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.

4. The trial court did not comply with the directives of R.C. 2929.11 and 2929.12 in sentencing Appellant to eight years in the Ohio Department of Rehabilitation and Corrections.

5. The trial court abused its discretion and erred to the prejudice of Appellant by not convicting Appellant of aggravated assault, the inferior degree offense of felonious assault.

6. The trial court's verdict was against the manifest weight of the evidence presented at trial.

**Evidence of "Prior Bad Acts" Under Evid.R. 404(B)**

{¶ 15} In his first assignment of error, Teal argues that the trial court erred in allowing the state to introduce testimony from three witnesses: Teal's former wife, an ex-girlfriend, and the ex-girlfriend's daughter. They testified about two incidents, both in 2008, when Teal broke into their respective homes, with a knife/box cutter, caused mayhem, and then threatened suicide. Teal argues that the testimony was impermissible evidence of other crimes, wrongs, or acts, in contravention of Evid.R. 404(B).

{¶ 16} "The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66.

{¶ 17} Teal concedes that he failed to object to the testimony at trial. Therefore, he has waived all but plain error. *State v. Getsy*, 84 Ohio St.3d 180, 192, 702 N.E.2d 866 (1998). "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

6.

**{¶ 18}** Evid.R. 404(B) and its statutory counterpart, R.C. 2945.59, "preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 16. The rule also provides, however, that evidence of other acts may be admissible for other purposes, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* at ¶ 19. As set forth in *Williams*, in considering other acts evidence, trial courts should conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403. *Id.* at ¶ 20.

**{¶ 19}** The state offered the testimony of three witnesses: Teal's ex-wife, "T.T.," Teal's ex-girlfriend, ("L.E."), and the girlfriend's daughter ("J.K."). Specifically, T.T. testified that, after their divorce, Teal broke into her home and hid in the shower with a

7.

knife. He came within two to three feet of T.T., but did not cut her. Teal did, however, cut himself in a failed suicide attempt. T.T. also testified that Teal choked her father, causing her father's face to turn blue. He also violated a "no-contact" order.

{¶ 20} An ex-girlfriend's daughter, J.K., described an incident, following her mother's break-up from Teal. She discovered Teal hiding in a guest bedroom closet at night. He gained access to the home by breaking a window, and when discovered, he shoved J.K. out of the way, causing J.K. to fall, as Teal "tried to get her" mother. Teal was ordered to have "no contact" with L.E., which he violated in person and by phone.

{¶ 21} Teal was charged and convicted following both home invasions, and records from those criminal cases were received into evidence. The records show that Teal was sentenced to prison on January 28, 2009, as to two counts of home invasion, third degree and one count of fleeing and eluding a police officer, fourth degree by the 38th Circuit Court in Monroe, Michigan. He was released onto parole on September 9, 2010.

{¶ 22} Teal argues that the testimony was "unrelated" to the charges in the instant case and was too remote in time. He argues that, even if relevant, the probative value of the testimony was substantially outweighed by unfair prejudice and therefore it should have been excluded by the court under Evid.R. 403(A). He adds that, without such testimony, "the remaining evidence [against him] is primarily the victim's testimony."

{¶ 23} The state counters that the evidence was offered for the purpose of demonstrating Teal's history of violence, an element of the menacing by stalking charge.

8.

Pursuant to R.C. 2903.211(A)(1), the state was required to show that Teal, "by engaging in a pattern of conduct," knowingly caused the victim to believe that he would cause her physical harm or mental distress. To elevate the menacing by stalking offense to a fourth-degree felony, the state was required to show that Teal had a "history of violence toward the victim or any other person or a history of other violent acts toward the victim *or any other person*." (Emphasis added.) R.C. 2903.211(B)(2)(e).

{¶ 24} We agree with the state that the testimony was admissible for the purpose of demonstrating Teal's history of violent acts; it was not inadmissible character evidence under Evid.R. 404(B). *State v. Jones*, 6th Dist. Wood No. WD-12-049, 2013-Ohio-5906, ¶ 36. We also find that this case simply does not provide the exceptional circumstances resulting in a manifest miscarriage of justice, a necessary predicate before finding plain error under *State v. Long,* 530 Ohio St.2d 91, 372 N.E.2d 804. The other acts evidence presented in this case was also overshadowed by other, more relevant evidence of guilt, namely the audiotape of the felonious assault itself and the victim's testimony.

{¶ 25} We find that the trial court's admission of the other acts evidence did not constitute plain error, and Teal's first assignment of error is not well-taken.

### Right to Counsel

{¶ 26} In his second assignment of error, Teal argues that he received ineffective assistance of counsel.

{¶ 27} The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct.

9.

2052, 80 L.Ed.2d 674 (1984).  To prove a claim of ineffective assistance of counsel, a defendant must show that:  (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs one and two of the syllabus, citing *Strickland* at 688.

{¶ 28} A reviewing court must determine whether trial counsel's assistance fell below an objective standard of reasonable advocacy.  *Bradley* at 141-142.  Moreover, the deficient performance must have been so serious that, "were it not for counsel's errors, the result of the trial would have been different."  *Id*.

{¶ 29} Moreover, trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight."  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 115.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland* at 691.

{¶ 30} In support of this assignment of error, Teal makes two arguments.  First, he cites trial counsel's failure to object to the introduction of evidence presented under Evid.R. 404(B), specifically the "damaging" testimony (previously described) by Teal's ex-wife, his ex-girlfriend, and daughter.  Teal argues that counsel should have objected to, or moved to strike, the testimony.

{¶ 31} "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel."  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.  Further, given our finding that the evidence at issue was

10.

not improper character evidence, it follows that Teal's trial counsel cannot be held ineffective for failing to object to such evidence. *State v. Curtis,* 9th Dist. Medina No. 04CA0067-M, 2005-Ohio-2143, ¶ 23 ("As counsel was not required to raise objections that lack merit, Appellant has not demonstrated ineffective assistance of counsel.").

{¶ 32} Teal also cites counsel's failure to object to the introduction of photographs, offered by the state, that "were not disclosed or provided" to Teal until they were introduced at trial as exhibit Nos. 131-134. Teal fails to describe the exhibits or to put forth any argument as to what impact the photographs had. More importantly, the transcript demonstrates that it was Teal who produced the photographs to the state.

{¶ 33} We find Teal's second assignment of error not well-taken.

**Costs**

{¶ 34} In his third assignment of error, Teal argues that the trial court erred in "imposing the costs of prosecution."

{¶ 35} The trial court made the following ruling in both cases with regard to costs:

> Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law.[1]

---

[1] The judgment entries are identical, except that, in the felonious assault case, the court also ordered restitution on behalf of a hospital that provided medical treatment to the victim. Teal does not challenge the order of reimbursement.

11.

{¶ 36} Our standard of review on this issue is whether the imposition of costs and financial sanctions was contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b). *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060, 2016-Ohio-1571, ¶ 4 citing *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, ¶ 30 ("An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law.").

{¶ 37} In his assignment of error, Teal raises only the imposition of *prosecution* costs. In the body of his appellate brief, however, he also challenges the costs imposed with regard to his *appointed counsel* and *confinement*.

{¶ 38} With regard to the costs of prosecution, Teal complains that the trial court ordered such costs "without inquiry as to [his] present or future ability to pay."

{¶ 39} R.C. 2947.23(A)(1)(a) provides that the trial court shall include in every sentencing judgment the costs of prosecution without consideration of whether the defendant has the ability to pay such costs. *State v. Rhoda*, 6th Dist. No. F-06-007, 2006-Ohio-6291, ¶ 13. Indeed, Teal acknowledges that a trial court need not determine a defendant's ability to pay prosecution costs, prior to imposing such costs. We find the trial court did not err by imposing the costs of prosecution.

{¶ 40} Before a trial court may assess the costs of confinement and/or attorney's fees, however, it must determine whether the defendant has, or will have, the ability to pay. Indeed, R.C. 2929.18(A)(5)(a)(ii) requires that the trial court impose against all convicted defendants a financial sanction for the costs of confinement in a state

12.

institution to the extent he is able to pay. Likewise, R.C. 2941.51(D) provides that the court can order the defendant to pay all or a part of the cost of appointed counsel but only if the court determines that the offender "has, or reasonably may be expected to have, the means to meet some part of the costs of the services rendered." *Id.* R.C. 2941.51(D) does not require that the court hold a hearing, although "there must be a finding on the record that the offender has the ability to pay." *State v. Mallow,* 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 12.

{¶ 41} The trial court stated in its sentencing entry that Teal has, or reasonably may be expected to have, the means to pay all or part of the costs of his confinement and appointed counsel. We find that the record supports the trial court's determination. Teal is currently 48 years old, with plenty of working years remaining once he is released from prison. Also, Teal holds a Class A commercial driver's license and has extensive remodeling and information technology ("IT") skills, making him employable in a variety of fields. At the September 28, 2015 sentencing hearing, Teal's attorney represented to the court that he had a job "waiting for him," such that if fines or costs were imposed, Teal "will have the capacity to get that done."

{¶ 42} We find that there was evidence in the record to support the court's conclusion that Teal has, or will have, the ability to pay the costs of confinement and appointed counsel. Accordingly, Teal's third assignment of error is found not-well taken.

13.

## Sentencing Under R.C. 2929.11 and 2929.12

{¶ 43} In his fourth assignment of error, Teal concedes that his eight-year prison sentence "falls within the guidelines" of R.C. 2929.14, the sentencing statute. He argues, however, that the lower court failed to consider the victim's intoxication and provocation as being contributory factors, which Teal argues, should be considered mitigating factors under R.C. 2929.12(C). Teal also argues that the eight- year sentence was not in compliance with the directive under R.C. 2929.11(A) "to punish the offender using the minimum sanctions."

{¶ 44} We begin with R.C. 2929.12, entitled "Seriousness and Recidivism factors." R.C. 2929.12(C) provides,

> The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense: (1) The victim induced or facilitated the offense. (2) In committing the offense, the offender acted under strong provocation. (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property. (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶ 45} There was clear recorded evidence of the victim repeatedly demanding that Teal leave her home, to get out, to stop touching her. Also, standing alone, a victim's

intoxication does not amount to a mitigating factor. *State v. Stanton*, 6th Dist. Lucas No. L-15-1081, 2016 Ohio App. LEXIS 2940. Because there was no evidence demonstrating that the victim's intoxication somehow induced or facilitated the offense, the court did not err in not considering the victim's intoxication under R.C. 2929.12(C). *See also State v. Saur*, 10th Dist. Franklin No. 10AP-1195, 2011-Ohio-6662, ¶ 47.

{¶ 46} Moreover, the trial court specifically noted its consideration of R.C. 2929.11 and 2929.12 in its sentencing entries. *State v. Hildebrand*, 6th Dist. Lucas No. L-14-1049, 2015-Ohio-918, ¶ 9 (Sentence that falls within the acceptable range under R.C. 2929.14 is not contrary to law where trial court's sentencing entry indicates that the court considered the principles and purposes of sentencing under R.C. 2929.11 and the factors under R.C. 2929.12); *see also State v. Craig*, 6th Dist. Wood No. WD-14-061, 2015-Ohio-1479, ¶ 13.

{¶ 47} Consecutive sentences were appropriate in this case due to Teal's criminal history, the fact that he was awaiting trial when he committed the intimidation offense, and the fact that the felonious assault occurred just five months after his parole ended in Michigan. Based on the above, the trial court did not err in ordering the offenses to be served consecutively, for a total of eight years. The trial court properly considered the statutory factors, and the record supported the sentence. Teal's fourth assignment of error is not well-taken.

15.

## Aggravated Assault as an Inferior-Degree Offense

{¶ 48} In his fifth assignment of error, Teal asserts that the trial court abused its discretion in failing to convict him of aggravated assault in violation of R.C. 2903.12, a felony of the fourth degree, rather than felonious assault in violation of R.C. 2903.11, a felony of the second degree.

{¶ 49} Teal claims sufficient evidence was introduced at trial to warrant consideration of aggravated assault, based on evidence of the victim's provocation and aggressive behavior toward him on December 18, 2013.

{¶ 50} The elements of felonious assault are identical to the elements of aggravated assault, except that aggravated assault has an additional mitigating element of "serious provocation."[2] *State v. Deem,* 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988), paragraphs two and four of the syllabus, *modified on other grounds, State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889. Teal bears the burden of proving the mitigating factor by a preponderance of the evidence. *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992), syllabus.

---

[2] Felonious assault is defined as "[n]o person shall knowingly do either of the following: (1) [c]ause serious physical harm to another * * *." R.C. 2903.11. Aggravated assault is an inferior, but not a lesser included offense of felonious assault. *Deem* at paragraphs two and four of the syllabus. The aggravated assault statute provides that "[n]o person, while under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force shall knowingly: (1) Cause serious physical harm to another * * *." R.C. 2903.12.

16.

{¶ 51} An objective standard is applied to determine whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage. *State v. Shane*, 63 Ohio St.3d 630, 634, 590 N.E.2d 272 (1992). For provocation to be serious, it must be "'reasonably sufficient to bring on extreme stress and * * * reasonably sufficient to incite or to arouse the defendant into using deadly force.'" *Deem* at 211, quoting *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist.1982). Moreover, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane* at 635.

{¶ 52} If the objective standard is met, the inquiry then shifts to a subjective standard to determine whether the defendant actually was under the influence of sudden passion or in a sudden fit of rage. *Id.* at 634. The emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time are considered to determine whether the defendant was reasonably provoked by the victim. *Id.*

{¶ 53} We have reviewed the record and find that the circumstances do not reflect that the victim acted with serious provocation. Testimony by the victim and Teal demonstrate that Teal was the aggressor from the beginning and that it was a one-sided assault. Even the victim's name-calling of Teal, that he was "a loser" and "a failure" does not warrant an aggravated assault consideration. Words alone will not constitute sufficient provocation to incite the use of force in most situations. *State v. Shane*, 63 Ohio St.3d 630, 637, 590 N.E.2d 272 (1992).

17.

**{¶ 54}** In short, we find nothing in the record to suggest that the trial court did not give due and fair consideration to the inferior-degree offense of aggravated assault. Moreover, as we found in the preceding section, because the evidence fails to demonstrate the existence of adequate provocation, we are unable to conclude that the trial court erred in finding Teal guilty of felonious assault, rather than aggravated assault. *State v. Balis*, 8th Dist. Cuyahoga No. 101520, 2015-Ohio-1296, ¶ 15-16 (Where defendant was the aggressor and punched the victim, knocked him off of chair, dragged him outside, stomped on him, and caused victim to lose consciousness, the evidence did not demonstrate that provocation was reasonably sufficient to warrant an aggravated assault instruction, even though evidence also showed that victim attempted to swing at defendant).

**{¶ 55}** Appellant's fifth assignment of error is not well-taken.

## Manifest Weight of the Evidence

**{¶ 56}** Finally, in his sixth assignment of error, Teal claims that the trial court's verdict was against the manifest weight of the evidence presented at trial.

**{¶ 57}** In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a

18.

new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387. "'[I]t is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *State v. Miller*, 6th Dist. Lucas No. L-08-1056, 2009-Ohio-2293, ¶ 21, quoting *State v. Brown*, 10th Dist. Franklin No. 02AP-11, 2002-Ohio-5345, ¶ 10.

{¶ 58} In support of this claim, Teal argues that, excluding the impermissible evidence allowed under Evid.R. 404(B), the only testimony upon which to base the verdict against him was the "incredulous" testimony of the victim. Teal claims that she displayed an "avowed hatred of [him] while simultaneously maintaining regular contact and remaining in a relationship with him even after [the assault]." Teal's argument does not speak to the truthfulness of the victim's testimony, rather that she exercised poor judgment in maintaining a relationship with him. In any event, it was for the trial court, acting as the fact finder, to assess the victim's and Teal's credibility. "[W]eight and credibility [of evidence] are primarily for the trier of fact." *State v. Pena*, 6th Dist. Lucas No. L-12-1309, 2014-Ohio-423, ¶ 22. This is because the trier of fact is in the best position to "view the witnesses and observe the credibility of the proffered testimony." (Quotation omitted.) *Id.* at ¶ 22. A jury, or a judge may believe all, part, or none of a witness's testimony. *Id.*

{¶ 59} Also, as we have found, the verdict was premised upon multiple pieces of evidence, none more damaging than the audiotape of the assault. In addition, there were medical records, other recordings, phone calls, photos, text messages, Facebook posts and screenshots. Appellant immediately fled after the felonious assault and apologized to the victim, both of which demonstrate his consciousness of guilt. Teal also never denied that he caused the victim serious physical harm.

{¶ 60} As to the intimidation charge, Teal sent text messages in which he attempted to persuade the victim not to cooperate with the prosecution. On the one hand, he offered her money, sent her gifts, proposed marriage, and offered to buy her a house, while on the other hand he threatened to ruin her business and family relationships.

{¶ 61} Having carefully reviewed the record, we conclude that substantial evidence supports the verdict, and that the trial court did not lose its way and create a manifest miscarriage of justice. We find that the verdict is not against the manifest weight of the evidence. Teal's sixth assignment of error is not well-taken.

{¶ 62} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Teal is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.

20.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　JUDGE

Arlene Singer, J.　　　　　　　　　　　

Thomas J. Osowik, J.　　　　　　　_____
CONCUR.　　　　　　　　　　　　　　　　JUDGE

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　JUDGE