[Cite as *State v. McCants*, 2020-Ohio-3441.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


STATE OF OHIO,                           :          APPEAL NO. C-190143
                                                    TRIAL NO.    B-1600121
    Plaintiff-Appellee,          :

                                                    *O P I N I O N.*

  vs.                                    :

ALBERT MCCANTS,                          :

    Defendant-Appellant.         :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
                              Remanded

Date of Judgment Entry on Appeal:  June 24, 2020



*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}     In this appeal, we are tasked with determining whether the trial court erred in imposing the maximum amount of fines, court costs, and court-appointed attorney fees on an indigent defendant who was sentenced to 16 years in prison pursuant to guilty pleas to multiple felonies. For the following reasons, we affirm the trial court's order imposing the fines and court costs, but reverse the court's order on attorney fees and remand for the court to conduct a hearing to determine McCants's present and future ability to pay those fees.

### *Factual Background*

{¶2}     McCants entered into a plea agreement, agreeing to plead guilty to voluntary manslaughter, theft, tampering with evidence, and obstruction of official business in exchange for a 16-year agreed prison sentence.  McCants admitted that he is a drug addict who owed money to his drug dealer, the victim in this case. McCants claimed that when he went to the victim's home to tell him that he would need more time to get the money, the victim pulled out a gun and the two started fighting.  McCants admitted to stabbing the victim several times and fleeing the scene, leaving the victim to die of his wounds.  The victim's home caught fire shortly after he was killed, but McCants denied starting the fire.

{¶3}     In sentencing McCants, the trial court stated:

Actually, sir, I wish I could give you more, but your attorneys did a great job for you and negotiated that plea to 16. That's what the state is giving you.  * * * There must be some reason they are offering 16, so I can't give you anymore, even though I would like to.

2

{¶4} During the sentencing hearing, the court spent considerable time questioning McCants about the offenses. It stated:

A man died here. You didn't show any emotion at all when his family members spoke, not a single bit of emotion. I don't really think you're sorry for what you did. I don't, and that's why I would give you more if I could, and that's why I'm so hard on you, sir, because a man lost his life at your hands.

{¶5} The court did not reject the agreed sentence. But the court did add the maximum amount of fines possible to McCants's aggregate sentence, which totaled $35,000. The court further imposed the maximum amount of court costs and ordered McCants to pay the court-appointed attorney fees.

{¶6} McCants raises three assignments of error on appeal: (1) the trial court erred in finding that he was not indigent, (2) the trial court erred in imposing maximum, consecutive fines, and (3) the trial court erred in imposing court costs and attorney fees.

### Fines

{¶7} For ease of discussion, we consider McCants's first and second assignments of error together. He argues that the trial court erred in finding that he was not indigent, and that the court erred in imposing maximum, consecutive fines.

{¶8} It is important to emphasize that we are not dealing with a mandatory fine in this case. The law did not require the trial court to fine McCants. The plea agreement included an agreed 16-year prison sentence and notice of the potential maximum fines. The plea agreement did not include an agreement regarding

whether fines would be imposed. In fact, the state did not request that the court impose a fine.

{¶9} The trial court clearly was disturbed by the facts of this case and what it perceived to be a lack of remorse by McCants. The court made clear that it would accept the agreed plea agreement for 16 years in prison, but that if McCants and the state had not included an agreed sentence as part of the plea agreement, then the court would have sentenced McCants to more than 16 years in prison.

{¶10} We review the imposition of fines just as we would any other felony sentence. *State v. Owens*, 1st Dist. Hamilton No. C-170413, 2018-Ohio-1853, ¶ 5. An appellate court "may modify or vacate a felony sentence only if we clearly and convincingly find that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*; R.C. 2953.08(G)(2).

{¶11} R.C. 2929.18(A)(3) permits a trial court to impose fines on a defendant convicted of a felony. The maximum amount depends on the degree of the felony. In the present case, the trial court imposed the maximum amount for each count, for a total of $35,000.

{¶12} Before a court imposes financial sanctions, it is required to consider the defendant's present and future ability to pay. R.C. 2929.19(B)(5). There are no specific factors the trial court must consider in its analysis, nor must it make any specific findings. *State v. Freeman*, 1st Dist. Hamilton No. C-180090, 2018-Ohio-4973, ¶ 10. As long as the record contains some indication that the court considered the offender's present and future ability to pay, the court's imposition of a financial sanction is not contrary to law. *Id.*

{¶13} The court is also not required to hold a hearing before imposing fines. Nevertheless, in the present case, the court did hold a hearing, during which McCants presented evidence of his present and future inability to pay.

{¶14} McCants first contends that the trial court erred in finding that he was not indigent. Indigency refers to a present inability to pay. *Id.* at ¶ 9. McCants filed an affidavit of indigency and testified at the hearing that he had no money, property, or assets, and that he had been in jail since December 2015. He testified that although he had worked prior to being arrested and had a bank account and a car, by the time of the sentencing hearing his bank account was "depleted" and his car had been repossessed. The presentence-investigation report ("PSI") in this case substantiated McCants's testimony. The state did not present any evidence contradicting McCants's asserted indigence, and on appeal concedes that McCants was indigent at the time of sentencing. Therefore, the trial court's finding that McCants was not indigent for purposes of R.C. 2929.18 was unsupported by the record. We sustain McCants's first assignment of error.

{¶15} Thus, the central question in this case is whether the trial court properly considered McCants's future ability to pay the fines, remembering that "R.C. 2929.19(B)(5) contemplates a gradual repayment of fines over a period of time." *See State v. Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, ¶ 37, citing *State v. Burnett*, 10th Dist. Franklin No. 08AP-304, 2008-Ohio-5224, ¶ 9.

{¶16} "[F]ines can be useful in dealing with serious offenses, if they are imposed in combination with other sanctions in circumstances that indicate that monetary deprivation will furnish some independent deterrent or correctional force."

Note, *Fining the Indigent*, 71 Colum.L.Rev. 1285 (1971). However, some commentators believe that "a fine cannot add any corrective or deterrent force to other penalties except where a pecuniary gain is involved." *Id.* at 1285, fn. 25.

{¶17} Being saddled with a major debt upon release from prison "can seriously impact the capacity of defendants to reintegrate as productive members of society: for defendants, 'unpaid criminal justice debt . . . can impact everything from their employment and housing opportunities, to their financial stability, to their right to vote.'" Nicholas M. McClean, *Livelihood, Ability to Pay, and the Original Meaning of the Excessive Fines Clause,* 40 Hastings Const.L.Q. 883, 886 (2013), quoting Alicia Bannon, Mitali Nagrecha, and Rebekah Diller, *Criminal Justice Debt: A Barrier to Reentry*, 13 (2010). Furthermore, "Financial penalties that push an individual beyond a certain fundamental level of economic survival and self-sufficiency are unnecessarily harsh and utterly counterproductive." McClean, 40 Hastings Const.L.Q. at 890.

{¶18} Previously, when determining a defendant's future ability to pay, this court has considered financial information from the PSI, education and employment history, social security benefits, and the defendant's potential for future employment, including his age and any limiting medical conditions. *State v. Cauthen*, 1st Dist. Hamilton No. C-130475, 2015-Ohio-272, ¶ 7; *Freeman,* 1st Dist. Hamilton No. C-180090, 2018-Ohio-4973, at ¶ 13.

{¶19} The only finding made by the trial court was that McCants was not indigent. The trial court did not make a specific finding regarding McCants's future ability to pay $35,000 in fines. But, as discussed above, the court did not have to make such a finding. *See Freeman* at ¶ 10. Thus, we must examine the record to

6

determine if the court *considered* McCants's future ability to pay and whether the record supports the trial court's decision to fine McCants.

{¶20} McCants points to his high blood pressure as medically limiting his potential, but that alone falls far short of indicating limited potential for future employment. *See State v. Hale*, 5th Dist. Perry No. 14-CA-00010, 2014-Ohio-4981, ¶ 18 (finding that the defendant had limited potential for future employment due to his medical conditions, which included hypertension, COPD, IBS, coronary artery disease, sleep apnea, a stroke, seizures, and the use of an oxygen tank); *State v. Campbell*, 12th Dist. Warren No. CA2012-08-070, 2013-Ohio-3088, ¶ 9 (affirming the trial court's finding of no future ability to pay due in part to defendant's medical conditions, which included diabetes, high blood pressure, nerve damage, a torn rotator cuff, depression, anxiety, and acid reflux).

{¶21} In *Delgadillo-Banuelos*, the court held that the defendant had the future ability to pay despite the fact that the fines totaled $35,000, and the defendant will leave prison at the age of 52 after serving a 16-year sentence. *Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, at ¶ 35-37. The court reasoned that the defendant was in good physical health, had past employment experience, and would be able to pay the fines gradually over a period of time. *Id.* at ¶ 37.

{¶22} In *State v. Blevings*, 12th Dist. Warren No. CA017-12-175, 2018-Ohio-4382, ¶ 19, the defendant was ordered to pay $2,700 in restitution. Although the defendant will be 65 years old after serving his 15-year prison sentence, and he argued that it will be "nearly impossible" for him to find a job, the court found that he had the future ability to pay based on his prior work history. *Id.* at ¶ 19.

{¶23} In *State v. Dean,* 2018-Ohio-1317, 110 N.E.3d 739, ¶ 76 (2d Dist.), the majority found that the defendant had the future ability to pay $7,000 in fines despite the fact that he would be 60 years old upon release from prison after serving a 26-year sentence. The majority reasoned that the defendant had worked in the past, had provided for his family, had no financial obligations other than a $60 a month child-support payment, was in good health, and would be able to work while incarcerated. *Id.* The dissent disagreed, citing the defendant's criminal history, his advanced age upon release, and how the imposition of fines would affect his ability to pay for basic living expenses upon release and successfully reenter society. *Id.* at ¶ 85-88 (Donovan, J., dissenting). The dissent noted, "We should not ignore the practical reality that even if working while in custody, [an inmate] cannot earn a base pay of more than $24.00 monthly." *Id.* at ¶ 85, citing Ohio Adm.Code 5120-3-08.

{¶24} While McCants may be able to make some minimal payments towards his fine during his 16-year prison sentence, he will be released from prison at age 58 with a significant amount of debt. According to the PSI, McCants has a GED and held a job for two and a half years at "Brighton Mills" in "production" before he was arrested. Also, McCants testified that while he was working he was the "main supporter" of his household. However, there was no evidence presented regarding McCants's past salary or his potential future salary. Furthermore, there is no information in the PSI about McCants's income previous to his time at Brighton Mills, his debts, or his monthly expenditures. McCants may be able to find a job upon release and make some payments towards his fines, but of course his future ability to pay is ultimately unknown.

{¶25} It is likely that a defendant with a lengthy criminal record, who serves a lengthy prison sentence for a serious offense, will have a difficult time finding employment upon release. In many cases, if the defendant can find employment, it will not pay well. *See* Dallas Augustine, *Working Around the Law: Navigating Legal Barriers to Employment During Reentry*, 44 Law & Soc. Inquiry 726, 740-741 (2019).

{¶26} Nevertheless, as discussed above, courts have held that where there is some evidence that a defendant was previously steadily employed, is not elderly, and is in relatively good health, he will be employable when he is released from prison, even if that prison term is lengthy.

{¶27} Our role as a court of appeals is not to question the wisdom of a trial court's sentence or to substitute our judgment for that of the trial court. Our role is to determine whether the sentence is clearly and convincingly contrary to law or unsupported by the record. Although it did not make a specific finding on McCants's future ability to pay the fine, it is clear that the court considered it. After a thorough review of the record, we cannot say that the trial court's decision to fine McCants $35,000 is contrary to law or unsupported by the record. Accordingly, we must overrule McCants's second assignment of error.

{¶28} McCants's first assignment of error is sustained. His second assignment of error is overruled, and the portion of the trial court's judgment imposing $35,000 in fines is affirmed.

### *Court Costs*

{¶**29**}   In his third assignment of error, McCants argues that the trial court erred in imposing court costs and appointed-attorney fees.  McCants first argues that because he is indigent, the trial court erred in assessing court costs.

{¶**30**}   "Costs are not punishment, but are more akin to a civil judgment for money."  *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15. Therefore, a trial court's imposition of court costs is reviewed for an abuse of discretion.  *Id.* at ¶ 23.   Trial courts are required to assess court costs against defendants, but *may* waive costs against an indigent defendant.   (Emphasis added.) *Id.*   In fact, other courts have held that a trial court need not even consider the defendant's ability to pay when imposing court costs.   *State v. Hodge*, 9th Dist. Lorain No. 14CA010648, 2015-Ohio-3724, ¶ 15;  *State v. Veal*, 2d Dist. Montgomery No. 25253, 2013-Ohio-1577, ¶ 5.

{¶**31**}   It was solely within the court's discretion whether to waive court costs due to indigency.  Despite our holding that the trial court erred in finding McCants not to be indigent, the court was nonetheless not required to waive court costs, especially considering McCants's future potential to pay the court costs.  The trial court did not abuse its discretion.

### *Appointed-Attorney Fees*

{¶**32**}   Also in his third assignment of error, McCants argues that the trial court's imposition of attorney fees was clearly and convincingly contrary to law because the record showed that he proved that he lacked a present or future ability to pay.

{¶33} R.C. 2941.51(D) provides that court-appointed attorney fees shall be paid by the county and shall not be taxed as costs to the defendant. Nevertheless, "if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." R.C. 2941.51(D).

{¶34} At the very end of the sentencing hearing, the court imposed "[c]ourt cost and attorney fees." The court ended the hearing, but then brought everyone back on the record so that it could notify McCants of his right to appeal and the amount of fines the court was imposing. The court again stated that it was imposing "court costs and attorney fees," but it did not discuss the amount of attorney fees McCants was expected to pay or his ability to pay. The court's sentencing entry stated, "The defendant is to pay public defender *attorney* fees." (Emphasis added.) The state interpreted this order as requiring that McCants pay the $25 "public defender fee" as required by R.C. 120.36. However, the language used by the court leads us to conclude that McCants was ordered to repay the county for the services rendered by his court-appointed attorney, and not simply the $25 public-defender fee.

{¶35} "Most courts that have addressed the issue have stated that R.C. 2941.51(D) does not authorize the assessment of attorney fees as part of a criminal defendant's sentence." *State v. Reese*, 1st Dist. Hamilton Nos. C-180126 and C-180412, 2019-Ohio-3680, ¶ 29. Rather, "after the court determines the defendant's ability to pay, it must enter a separate civil judgment for the fees or the part that the defendant has the ability to pay." *Id.*; s*ee State v. Miller*, 2d Dist. Clark No.

08CA0090, 2010-Ohio-4760, ¶ 57 ("the trial court lacks statutory authority to impose the payment of costs of appointed counsel in a criminal prosecution as part of the financial sanctions authorized by R.C. 2929.18. Rather, that sanction must be prosecuted in a civil action").

{¶36} The sentencing court may determine the defendant's ability to pay appointed-counsel fees during the sentencing hearing. *See State v. Riley*, 11th Dist. Portage No. 2018-P-0031, 2019-Ohio-3327, ¶ 100. R.C. 2941.51(D) does not require that the court hold a separate hearing to determine the defendant's ability to pay, but "there must be a finding on the record that the offender has the ability to pay." *State v. Teal*, 2017-Ohio-7202, 95 N.E.3d 1095, ¶ 40 (6th Dist.).

{¶37} Although not expressly decided by this court, we have indicated in past cases that the trial court is required to make an express determination regarding the defendant's ability to pay appointed-attorney fees. *See Reese* at ¶ 30; *State v. Watkins*, 96 Ohio App.3d 195, 198, 644 N.E.2d 1049 (1st Dist.1994). The issue of whether R.C. 2941.51(D) requires an explicit finding before a defendant may be ordered to pay appointed-attorney fees is currently before the Ohio Supreme Court. *See State v. Taylor,* 154 Ohio St.3d 1421, 2018-Ohio-4495, 111 N.E.3d 19.

{¶38} In the present case, there is no indication in the record that the trial court considered McCants's ability to pay the appointed-attorney fees at the sentencing hearing. Therefore, we reverse the order requiring that McCants pay the appointed-attorney fees, and remand this cause for the trial court to conduct a hearing to determine McCants's present and future ability to pay the appointed-attorney fees. If the court determines that McCants has the ability to pay, it must enter a separate civil judgment for the amount it determines he can pay. The third

assignment of error is overruled as to the imposition of court costs, but sustained as to the imposition of attorney fees.

### *Conclusion*

{¶39} McCants's first assignment of error is sustained. His second assignment of error is overruled. His third assignment of error is sustained in part and overruled in part. The portion of the trial court's judgment imposing attorney fees is reversed and this cause is remanded for a hearing pursuant to this opinion. The court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.


**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.